Wm. A. Anderson, Admr., *v.* Robt. E. Gregg et al.

1. Probate court—Practice.—Any person entitled to distribution of an estate, may apply for that purpose, and the strict, technical rules of pleading do not apply to such proceedings in the probate court. That court had ample power to refer accounts of administrators and others to a commissioner for examination and restatement. 35 Miss., 356; 38 ib., 167.

2. Administrator—Discretion—Probate court.—Where the assets of an estate consist of bills of exchange drawn by persons or firms residing out of the estate, or persons or firms residing out of the state, and did not come into the hands of the administrator until they were past due, and so no demand was, or could be made by him for payment at maturity; and upon application by him to the drawers in Mobile, and the drawers in New York, both declined payment; and being in doubt as to the liability of either of the parties, and apprehending that these bills might be lost to the estate, he negotiated them to several persons in exchange for their promissory notes with security, and had collected some of them. *Held:* That this was a judicious exercise of discretion by the administrator, and in which he ought to be sustained by the court. 43 Miss., 517.

3. Non-resident debtors—Power of administrator as to responsibility.—The office and power of an administrator is limited to the state of country, whose courts confer the office, and he cannot in a foreign jurisdiction, sue for, and collect in assets, whether in the form of tangible property, or choses in action. The administrator appointed in this state, could not make in Mobile or New York, a legal demand for payment of these bills of exchange. Riley v. Mosely, *supra* 1. He can only be held to a fair account for the promissory notes received in exchange for these bills, and to reasonable diligence for their collection.

4. Choses in action—Distributed with consent of distributees.—Where the assets of an estate consists in notes and other choses in action, uncollected, a final settlement and distribution cannot be made, unless the distributees will consent to receive the notes, or other evidences of debt, or unless the administrator has by negligence, made himself liable for them. 41 Miss., 409.

5. Debts and distributive shares—Set-off.—Where distributees are debtors to the estate, there is no reason why their indebtedness should not be treated in the light of a set-off against their distributive share, if so agreed with the administrator; but this indebtedness must be considered as part of the assets that go to make the aggregate for distribution.

6. Distributive share of wife of debtor—Separate property—Cannot be set-off.—Where the wives of debtors of the estate are distributees, the fund is theirs, and constitutes a part of their separate estate, under the married woman's law, and is not subject to the disposition of the husband, and a payment of any part thereof to the respective husbands without their authority and consent, is no discharge of the administration, or legal appropriation of the fund.

7. Conversion of choses in action—Administrator's liability.—Suit was instituted by intestate on a $2,000 draft, against certain parties, of whom A., the administrator, was one. At his suggestion, the suit was abated, and he subsequently received from the attorneys of intestate, the draft sued on, reciting in his receipt to them for the same, " And I hereby charge myself with the amount of said bill of exchange as of its maturity," and signed, by him, administrator of Chas. A. And on the same day, as such administsator, acknowledged the receipt of $2,179 56 from S. & P., the amount of a judgment in the circuit court, against the same parties, as those in the suit, on the above bill. *Held :* That the administrator was properly charged with the amount of the bill of exchange, and that of the judgment also.

8. Administrator when chargeable with interest on profits.—Whether an administrator shall pay interest, depends necessarily on the circumstances of each case. Court incline to the doctrine, that a trustee shall not be permitted to make profit out of the trust funds. The office is one of trust, and often of confidence, and therefore, if he loans out the credits and funds of the estate at interest, or otherwise makes a profit out of them, he should be charged with the uttermost farthing of profit thus made. And if on account taken, such profits cannot be traced and ascertained, then he should be charged interest on the amount of the funds. 32 Miss., 340 ; 31 ib., 596.

9. Same.—Ordinarily, an administrator is not chargeable with interest, until a year after his assumption of the office, yet, the rule is not absolute, and should the administrator, so soon as the moneys and credits are subject to his control, negotiate and deal with them for gain, the interest account may, at once, accrue against him. Or, if he keeps the assets dead in his hands, when it ought to have been distributed, he shall be charged with interest thereon. Although, the administrator is not *prima facie* responsible for interest for one year, yet, if in fact, he has during that time received interest, or used the credits or money, he must pay interest. After that

Assignment of errors.

time he is *prima facie* liable for interest on all moneys coming into his hands, and can only relieve himself by showing an application of the money to the exigencies of the estate. 32 Miss., 340 ; 6 Watt, 250 ; 18 Pick., 28 ; 11 ib., 371 ; 3 Gill v. Johns., 20, 24 ; 1 McCord, Ch., 247.

10. INTERESTED WITNESS—COMPETENCY—PRACTICE.—All persons except those included in the proviso to art. 190, Rev. Code, are competent, notwithstanding they are parties to the record, or are interested, but they must depose orally in open court ; and if their depositions are offered, and it appears that they are interested, then they should be excluded.

11. FOREIGN ADMINISTRATOR—PAYMENT OF DEBTS TO.—An executor in Georgia has no authority to intermeddle with the assets of his testator in this state ; his authority is confined to the territorial limits of the forum of his appointment ; but if the administrator here, can show that a debt paid to the agent of an executor in Georgia, was by him accounted for as part of the assets of his testator in that state, then the estate of the intestate here, will thereby have been discharged, and the administrator should be credited with the amount.

12. DISTRIBUTION BEFORE FINAL SETTLEMENT—INTENDMENT OF LAW.—The mere fact that part of the assets consists of choses in action, does not deprive the distributee of his right to distribution after the lapse of twelve months. 41 Miss., 406. Rev. Code, 454, art. 118, contemplates that there may be two distributions, one before final settlement, on executing refunding bond, the other, upon final settlement ; the reasonable intendment of the statute being that those entitled as distributees, shall receive their aliquot portions of the estate, whenever the administrator has funds in his hand, not needed to meet claims of creditors.

Appeal from the probate court of Pontotoc county. NEELY, J.

The appellant assigned the following errors :

1. The court below erred in overruling the demurrer and motion of appellant to dismiss the petition, because it was filed by the next friend of the minor who had a legal guardian that dissented from the filing of the petition.

2. In requiring appellant to make final settlement as administrator of the estate of Charles Anderson, where it was disclosed by his answer, and not contradicted by the proof, that the assets of said estate had not been collected, and without any fault or negligence of appellant.

3. In charging the administrator with interest upon the money reported in his inventory.

4. In sustaining exceptions 11, 12, 13, 14, 15, 16 and 17 to the final account, the same being for credits in said final account for amounts paid by the administrator to the heirs and distributees of said estate.

5. In sustaining the 18th exception to the final account.

6. In sustaining the 23d exception to the final account. The exception taken to the amount paid by the administrator to John Lackey, constable, for execution in the hands of the constable.

7. In sustaining those exceptions to the final account, by which the administrator was charged with the sum of $6,000 for two bills of exchange, which had not been collected without any fault or negligence of the administrator, and when his intestate had released the principal, Duncan Clarke, from the debt.

8. In sustaining the 28th and 31st exceptions to the final account,. whereby the administrator was charged with the amount of a bill of exchange drawn by St. John, Powers & Co., of Mobile, Ala., and upon Duncan, Sherman & Co., for the sum of $1,000, the same being intended as the second of exchange, and the first having been collected by the administrator.

9. In excluding as testimony the receipts of Charles Anderson, to Wm. A. Anderson, John G. Kolheim and John R. Anderson.

10. In excluding as testimony the letter of Charles Anderson to Duncan Clarke, releasing said Clarke from the drafts charged to administrator.

11. In excluding the deposit of Benjamin A. Whitaker.

12. In refusing to sustain the exception of appellant to the report of the commissioner.

13. In failing to dispose of the petition asking that certain issues be submitted to a jury.

*Houston & Reynolds,* for the appellant.

An infant who has a guardian, may sue by his next friend. Rev. Code, 483, art. 36; Hooks v. Smith, 18 Ala., 338; but not if the guardian do not assent. Robinson v. Osborne, 13 Texas, 298; Thomas v. Dyke, 11 Vermont, 273. An administrator may be compelled to make final settlement " when the estate has been fully administered, by payment of all the debts and the collection of all the money due." Rev. Code,

451, art. 156; Grant v. Spain, 33 Miss., 136; Allison, adm'r, v. Abrams, 40 Miss., 747. But the estate clearly could not be finally settled until the assets have been collected, or the administrator has made himself chargeable with them by some act of gross negligence or fraud. Smith v. Hurd, 8 S. & M., 682. The fact that, in this case, the assets were not collected, is beyond dispute; and we insist that there is nothing in the testimony or the facts of this case to fix either negligence or fraud upon the administrator.

The assets were land warrants, bills of exchange, receipts of attorneys for claims, etc. The administrator was not bound to convert these warrants into money, unless necessary to the payment of debts, and such was not the case here. The bills of exchange were convertible into money, and had they have been assets within his jurisdiction, the administrator was bound to use due diligence in collecting them. But they were foreign bills, drawn by parties in Alabama, upon parties in New York. They were assets in a foreign jurisdiction, and the administrator, as such, and by virtue of the laws of this state, has no power to collect assets of the estate in another state. Satterwhite v. Littlefield, 13 S. & M., 302–5; 30 Miss., 160; 36 Miss., 169; Story's Conflict of Laws, 504, 515, 517. As to the conversion of the bills of exchange into the promissory notes, with security, see Cason v. Cason, 31 Miss., 596. The administrator had the right to make the arrangement which he did with the distributees of the estate. French v. Davis, 38 Miss., 167.

It was error to direct the commissioner to charge the administrator with interest on the amount of money reported in the inventory. As a general rule, an administrator is not chargeable with interest before the lapse of twelve months from the date of his qualification. Cason v. Cason, 31 Miss., 578, 596; Brandon v. Hoggatt, 32 Miss., 336.

The administrator was entitled to credit for the amount paid to the distributees of the estate. The petition shows that they were the descendants of Charles Anderson (with one exception), and were interested in the distribution. 40

Miss., 765.   As to the payment of the claim of R. Bolton, agent of Bendie, see Sims v. Sims, 30 Miss., 333; Perry v. West, 40 Miss., 233; see also Satterwhite v. Littlefield, 13 S. & M., 302–305; Story's Conflict of laws, 504, 515, 517. As to the refusal of the court to allow credit to the administrator for the amount paid Lackey, the constable, see Harrolson v. White, 38 Miss., 178.

The administrator should not have been charged with the bills of exchange and judgment.   The principal, in these bills and judgment, D. Clarke, had been released from their payment by the intestate in his lifetime.   Besides, payments had been made to the intestate on these bills, and hence the administrator should not have been charged with their full amount.   Franks v. Wagner, 25 Miss., 121.

The bill of exchange for $1,000, drawn by St. John, Powers & Co., of Mobile, on Duncan, Sherman & Co., of New York, was assets in a foreign jurisdiction, with which the administrator was not chargeable, unless he had actually collected the amount.   Satterwhite v. Littlefield, 13 S. & M., 302–304; 30 Miss., 160; 36 Miss., 69.   As to the force of Anderson's letter to D. Clarke (releasing him on the bills of exchange) and the receipts as evidence, see 5 Eng. Law & Eq. R., 351; 7 How. Miss., 420.

The deposition of Whitaker was erroneously excluded.   26 Miss., 129; 1 Greenl., 386, 389, 390, 400.

SIMRALL, J.:

Proceedings were instituted by Robert E. Gregg, for himself, and as next friend of ——— Gregg, a minor, against Wm. A. Anderson, administrator of Charles Anderson, deceased, for a final settlement of his administration, and for the distributive share of petitioners claiming to be heirs of the intestate.

More than two years had elapsed since the decease of the intestate and grant of letters of administration.

Final settlement was resisted by the administrator, on the allegation that the assets of the estate had not all been got

in, and, therefore, he was not prepared to make the distribution. Under an order of the court, however, he presented an account, to which many exceptions were taken, most of which were sustained; and it was referred to a commissioner to restate the account, in accordance with the instructions given by the court.

· On the coming in of the commissioner's report, sundry exceptions were made by the administrator—sustained in part, and final decree rendered, amounting to the sum of $ ———, found to be due from the administrator to the distributees.

Objection was taken to the petition, because the minor was associated as party plaintiff, by R. E. Gregg, his next friend.

Any person entitled to distribution, may make application for that purpose. Nor do the strict technical rules of pleadings apply to such proceedings, as held in the case of Crowder v. Shackelford, 35 Miss., 356.

In French v. Davis, 38 Miss., 167, it was said that "petitions for distribution are informal, and not regulated by technical rules." The proper judgment may be arrived at "without regular and formal pleadings." So is Monday v. Calvit, 40 Miss., 179.

The case of Crowder v. Shackelford, already cited (if the point needed authority), disposes of the objection made "to the power of the court to refer the accounts to a commissioner for examination and restatement."

2. The assets of the intestate consisted almost exclusively of choses in action. Of these, sundry bills of exchange were the larger part drawn by St. John, Powers & Co., of Mobile, Alabama, on Duncan, Sherman & Co., New York.

It is answered by the administrator, that some of these bills did not come to his possession until after their maturity; and that no demand of payment was made, or could have been made by him, at their maturity, on the drawees. On application made to Duncan, Sherman & Co., and to the drawers, both declined to take up the bills. Being in doubt as to the liability of either drawers or drawees, and appre-

hending that they might be lost to the estate, the adminis-trator negotiated these bills to several persons, in exchange for their promissory notes, with surety, some of which he had collected.

There can be no doubt that this arrangement, if the fact be as stated, was eminently beneficial to the estate, and in all probability resulted in saving to the estate of whatever these prommissory notes have and may realize.

We held in a case decided at this term, in accordance with settled law, that the office and powers of an administrator are limited to the state or county whose courts confer the office, and that he cannot, in a foreign jurisdiction, sue for and collect in assets, whether in the form of tangible property or choses in action. Riley v. Mosely, *Supra* 37.

The administrator appointed in this state, could not go to Alabama and New York, and make claim of either the drawers or drawees of these bills. It may have been his duty, either in person or through an agent, to have procured or caused to have been procured, anciliary letters in the foreign forum, in order to collect these credits.

His conduct in the negotiation of these bills, being for the interest of distributees, and *bona fide*, will be protected. Such act was not beyond his authority. Martin & Cook v. Tarver, 43 Miss., 513. He can only be held to a fair account for the promissory notes received in exchange for these bills, and must use reasonable diligence for their collection. No profit will be allowed to enure to him, on account of ex-change, or a greater rate of interest.

It has been decided in this court, that where the assets of the estate consist in notes or other choses in action uncol-lected, a final distribution cannot be made, unless the dis-tributees will consent to receive the notes, or other evidences of debt, unless the administrator, by negligence, has made himself liable for them. Murff v. Frazier, 41 Miss., 409.

The disclosure of assets made in the answer of the admin-istrator is as follows :

Money at decedent's death, $730 74; bills of exchange
    VOL. II—12

drawn by St. John, Powers & Co., of Mobile, on Duncan, Sherman & Co., of New York, $9,991 00; Sale & Phelan's receipt for bill of exchange drawn by D. Clarke and others, for $2,000 00; receipt of McDowell, Withers & Co., for bills of exchange on D. Clarke and others, heirs and distributees in their own right, or in right of their heirs, for $4,000 00; receipt of Dowd & Houghton, for note of $580 00; land warrants for 780 acres of land. In the aggregate, $18,061 70.

The administrator has not collected the paper of Clarke and others, specified in the receipts of the attorneys, because he supposed that it might be accounted for in the distribution. Has sold part of the land warrants; the residue on hand, and not capable of sale, on account of mutilation. Bill drawn by St. John, Powers & Co., No. 5,392, was duplicate, not collectable, and, therefore, he did not sue on it.

In the account rendered, the administrator claims credit for the bill of exchange of $4,000 00, drawn by D. Clarke and others, in hands of attorneys, Sale & Phelan, and also for the unused part of land warrants, $400 00. And for the bill, No. 5,392, which was intended for a second or duplicate amount, $1,000.

Exceptions 11, 12, 13, 14, 15, and 16 involve the propriety of allowing the administrator credit for sundry payments said to have been made to distributees. If the distributees are debtors to the estate there is no reason why their indebtedness should not be treated in the light of a set-off against their distributive share, if so agreed with the administrator. In doing so, however, the indebtedness must be treated as part of the assets, and as contributing to make up the the aggregate for distribution; otherwise there could not well be an equalization of the respective portions of the distributees.

The wives of two of these debtors to the estate are the daughters of the intestate and distributees of the estate. The fund is theirs, and not their husbands'; it is part of their separate estate under the married woman's law, and not subject to the control and disposition of the husbands. A pay-

ment of any part of it to their respective husbands without their authority and consent, is no discharge to the administrator, and is not a legal appropriation of the fund. The administrator would not be justified in refraining from the collection of the debt due by the husbands on the suggestion that the indebtedness should be liquidated by treating it as a credit on the distributive shares of their respective wives. No such arrangement is obligatory on the wives without their express and unequivocal consent. The receipts produced by the administrator, signed alone by the husbands, do not furnish evidence of an acquittance *pro tanto* on the distributive portions of the wives. There was no error, therefore, in disallowing credit to the administrator therefor. Such mode of vesting in the husband, beneficially, the inheritable interests of the wife, should not be encouraged, but should be carefully scrutinized by the court, and only sustained when distinctly recognized and ratified by the wife.

On the state of proof before the court the administrator was not justified in the payment of the claim which is the matter of the 18th exception. Riley v. Mosely, *supra*, 37. The claim belonged to the estate of a decedent in Georgia. The legal representative was appointed in Georgia.

The 23d exception ought to have been overruled; the claim is sustained by a sufficient voucher. The receipt of a sheriff to an administrator is *prima facie* evidence if it purports to acquit of a debt against the intestate, and is paid on an execution in hands of officer. Harrelson v. White, 38 Miss., 178.

The 25th, 26th, 32d, and 34th exceptions question the propriety of charging the administrator with $6,000 for bills of exchange which had not been collected, because, it is claimed, that the intestate released Duncan Clarke therefrom. By reference to the testimony it will be seen that these exceptions ought not to have been sustained.

The administrator is chargeable with the amount actually received for the land warrants, but is not chargeable in money for such as have not been collected, which forms the matter of the 27th exception and also of the 29th.

That 28th and 31st exceptions relate to the bill of exchange No. *S.* 392, which the administrator made no effort to collect, on the ground that it was a duplicate. The testimony, if admissible, shows that this was a duplicate. There were but five bills of $1,000 each. The administrator was only entitled for the benefit of the estate, to collect $5,000 on them. If he has by mistake, realized on the duplicate, by a negotiation and sale of it, he would be liable to refund the money. If he did not collect it, the witness Whitaker proves that he had no right to collect, the first of same tenor having been paid. As to the admissibility of the letter of Charles Anderson to the intestate, dated 12th July, 1857, opened to show that the intestate had made some settlement with Duncan Clarke about his indebtedness, whether admitted in evidence or not, it falls short of producing the result claimed for it, especially as connected with the other testimony. .

At the decease of the intestate in 1857, suit was pending in the District Court of the United States at Pontotoc, in the name of the intestate, against Duncan Clarke, Kolhiem, John R. Anderson and W. A. Anderson, founded on a bill of exchange due 1st May, 1857, for $2,000. The death of Charles Anderson, was suggested, and at the instance of his administrator, the suit abated. This suit was conducted by Messrs Sale & Phelan, attorneys.

Subsequently, on the 20th April, 1868, W. A. Anderson secured from Sale & Phelan, this bill of exchange, and gave them a written receipt therefor; the closing paragraph of which is in these words: " And I hereby charge myself with the amount of said bill of exchange as of its maturity." Signed, "W. A. Anderson, administrator of Charles Anderson." And on same day, W. A. Anderson, administrator, acknowledged receipt from Messrs. Sale & Phelan, of the sum of $2,179 56, the amount of a judgment in the circuit court of Pontotoc county—John J. Carson, plaintiff, against the same parties as those to the above bill of exchange—which judgment then belonged to the administrator of Charles Anderson, deceased.

It will be observed that long after the date of this letter, W. A. Anderson had this transaction with Messrs. Sale & Phelan, and was in position to know the truth, for he was party defendant to both suits, yet he declares that he charges himself with the draft, and acknowledges receipt of the amount of the judgment.

If there had been a discharge by the intestate, or a release to Clarke of his indebtedness, better testimony of it was accessible than this vague letter, or at least something confirmatory of it. There was no error in holding the administrator chargeable with the bill of exchange, and the proceeds of the judgment.

The administrator attempted to obtain credit for three receipts which have reference to the bills of exchange, all purporting to be signed by Chas. Anderson—one in favor of John Anderson, for $500, dated the 23d December, 1854; the other in favor of W. A. Anderson, for $1,000, dated 11th June, 1857, the other in favor of Kolheim, for $1,200, dated 24th June, 1857.

The parol testimony adduced at the hearing by the objections, to say the least of it, tended strongly to cast a shade of doubt and suspicion as to their genuiness. The testimony on this point complied with the receipts given about a year afterwards to Sale & Phelan, in reference to these bills of exchange, which doubtless induced the probate judge to regard these receipts as spurious. We are not prepared to say that this was error. It was an opinion on a question of fact—on the effect of testimony partly oral. A prominent fact, stated by the expert, was, that the body of the receipts, in his opinion, had been written over a genuine blank signature. The court refused to allow the receipts to be read, unless authority was shown to write the body of the receipt over the signature. We are disposed to consider the ruling of the court as deciding that on all the testimony before him, the administrator ought not to be credited by these several amounts.

The exceptions to the commissioner's report, present no other points than those already considered, except the inter-

est charged against the administrator on the moneys in his hands.

Whether the administrator shall pay interest, depends necessarily on the circumstances of each case. It is a favorite doctrine of the courts, that a trustee shall not be permitted to make profit out of the trust funds. This office is one of confidence, and often of friendship, for those connected with, and are beneficiaries of the trust. If he acts under appointment by deceased, or last will, these prescribe his duties and the mode of discharging them. If he is appointed by the courts as an administrator, the law defines his office, and marks out the measure of his authority and the line of his conduct. The compensation allowed to him is supposed to cover his time, trouble and risk about the business of the estate—he ought not to be permitted to make over and above this the slightest gain out of the assets subject to his control. If, therefore, he loans out the credits and funds of the estate, as proved in this case, for large rates of exchange and interest, he should be charged with the uttermost farthing of profits thereby made. If an account taken cannot trace and ascertain the amount of such profits, then he should be charged interest on the funds. The means with which he deals are not his own. Brandon v. Hoggatt, 32 Miss., 340; Cason v. Cason, 31 Miss., 596.

Ordinarily, the administrator is not chargeable with interest until twelve months after his assumption of the office. Because, at the end of the year, if the condition of the estate will admit of it, he ought to make distribution, and that length of time may be required to settle with creditors, and thereby be prepared for the distribution. But as said by the court in Brandon v. Hoggatt, the rule is not absolute and inflexible. Should the administrator, so soon as the moneys and credits are subject to his control, negotiate and deal with them for gain, at once the interest account may begin against him; so, too, if he keeps the money dead in his hands without reason or necessity, when it ought to have been distributed, interest shall be decreed against him. Cases just cited.

Although the administrator is *prima facie* not responsible for interest during the interval allowed for getting in the assets, paying claimants, and settling his account, which by our statute is one year, yet if it be proved that during that time he has received interest, or used the money or credits, he must pay interest.   Verner's Est., 6 Watt, 250.

After that time, he is *prima facie* liable for interest on all moneys coming to his hands.   Boynton v. Dyer, 18 Pick., 28. And can only relieve himself by showing an application of the money to the exigencies of the estate.   Lamb v. Lamb, 11 Pick., 371; Wilson v. Wilson, 3 Gill & Johns., 20, 24; Pace v. Burton, 1 McCord Ch. 247.

We think the account was taken on proper principles, as respects interest.

We have said that the testimony showed that the draft No. 5,392, was a duplicate; that testimony was the answer of the administrator, and the deposition of Whitaker (the answer having been read as evidence against the administrator). Objection was made to the deposition of Whitaker, on the score of incompetency, and as the cause will be remanded, it is necessary to pass on that point.   All persons except those included in the proviso to art. 190 of the Code, are competent, notwithstanding they are parties to the record, or interested but they must depose, orally in open court. If their depositions are offered, and if it appears that they are interested, then they must be excluded.

Whitaker was a member of the house that drew the draft in question; it was manifestly to his interest, therefore, to show that the bill was a second or duplicate, and that the first or original had been paid, for thereby he would relieve his firm of responsibility of the payer.   The defense made by the administrator in this proceeding, if successful, would make this record evidence against the administrator in any suit brought by the administrator on this bill of exchange against the drawers.   Whitaker, then, was testifying for his own exoneration, and the record of the suit wherein he testified would be evidence for him in a suit on the payer by the administrator.   The deposition ought to have been excluded.

In regard to the disallowance of the payment made to Bolton, agent of Bendie, who was executor in Georgia, of Phizyou, deceased, of that state, it may be observed that the executor in Georgia had no authority to intermeddle with the assets of his testator outside of that state. This appointment was local, and confined him to the territorial limits of the forum of his appointment. But, as it has been declared in this court, if the executor or administrator appointed in this state get in assets in a foreign jurisdiction, and bring them here, and voluntarily subject them to the jurisdiction of the probate court, by rendering account for them, he shall be held to dispose of them as assets of the estate. Satterwhite v. Litchfield, 13 S. & M., 304. So if the administrator can show that the debt paid to the agent of the executor in Georgia was by him accounted for as part of the assets of the testator in that state, then the estate of Charles Anderson will thereby have been discharged, and credit should be allowed for it in this settlement on the return of the case to the chancery court that opportunity will be allowed him.

The mere fact that part of the assets consist of uncollected choses in action does not, of itself, deprive the distributee of his right to distribution after the expiration of twelve months. In Murff v. Frazier and wife, 41 Miss., 409, the entire estate consisted of notes given for property sold, and these notes were uncollected and in suit when the application was made.

Rev. Code, 454, article 118, evidently contemplates that there may be two distributions, one before final settlement, on the condition of executing a refunding bond; the other at and upon final settlement, without such bond. If the application be before final settlement the court may make the rule on the administrator " to make distribution according to law," if, in the opinion of the court, it would be just and proper, and for the best interests of all concerned." If the year has expired, and the administrator has collected in a large sum of money, and this money, or a large part, is not required to meet the known claims of creditors, what reason can be assigned why the rule should not be made on the administrator to distribute it on taking refunding bonds?

The reasonable intent of the statute is that those entitled as distributees shall receive their aliquot portions of the estate whenever the administrator has funds in hand not needed to meet the claims of creditors; and if the accounts rendered show a moneyed balance, if creditors are not claiming it, then a "just and proper care for the best interest of all concerned," exists within the intent of the statute for a rule to distribute. If there are credits uncollected they can stand over to a final settlement. These partial distributions take away from the administrator all temptation to embark the funds in speculations or adventures for profit. They encourage diligence in gathering in the assets, and are the surest modes of preserving estates from shipwreck by improvident management, and the speediest way of putting those appointed by law to enjoy them in possession, and greatly lessen the risk of those who undertake, as sureties, for the administrator. Such was our view of the statute in Packwood et al. v. Elliott.

If we were of opinion that this administrator had not collected in all the credits, and had not dealt with them so as to have made himself personally liable, we would have no hesitancy in directing a settlement and a distribution of the balance so found in the hands of the administrator, leaving the outstanding credits to be accounted for on final settlement.

The report of the commissioner, who restated the accounts is confirmed, except so far as exceptions to the account stated by the adminisirator and restated by him, have been sustained in this opinion. Both parties will have leave to offer additional testimony in reference to the payment made to Bolton, agent, and the bill of exchange No. 2,392. Decree reversed, and cause remanded.