## Montgomery Sheriff et al. *v.* Mutual Life Insurance Company of New York.

### [71 South. 162.]

1. Executors and Administrators. *Collection of assets. Compromise of claim. Insurance. Surrender. Reimbursement. Paying premiums.*

   Where the administrator acts in good faith, a compromise by him of a claim or a debt due to the estate is valid and binding, without previous authorization in vacation, as provided for by Code 1906, section 2065.

2. Insurance. *Surrender. Paying premiums. Reimbursements.*

   Where after a wife's death, her husband paid two premiums on a policy on his life which had been assigned to his wife, and subsequently surrendered the policy in exchange for a paid-up policy, and afterwards the husband and the administrator of the wife surrendered the paid-up policy upon payment of its cash surrender value, the premiums paid by the husband with interest then amounted to more than the surrender value. In such case the administrator properly paid this amount to the husband; the payment by the husband having inured to the benefit of his co-beneficiaries, the heirs of his wife.

Appeal from the chancery court of Lincoln county. Hon. P. Z. Jones, Chancellor.

Suit by T. H. Montgomery, sheriff and administrator and another, against the Mutual Life Insurance Company of New York. From a decree dismissing the bill, complainants appeal.

The facts are fully stated in the opinion of the court.

*M. McCullough,* for appellants.

*R. H. & J. H. Thompson, H. Cassedy* and *J. W. Cassedy,* for appellees.

Potter, J. delivered the opinion of the court.

On the first day of March, 1892, William R. Kennedy insured his life in the Mutual Life Insurance Company

of New York for two thousand, five hundred dollars and the policy was made payable to himself, his executors, administrators, or assigns. The annual premium on the policy was ninety-seven dollars. One premium was paid at the time the policy was issued, and future payments of the same amount were to be made each year after that date until 20 payments should be made. On August 1, 1892, Mr. Kennedy assigned the policy of life insurance above mentioned to his wife, Mrs. Amanda E. Kennedy, and the insurance company was notified of the assignment. Mrs. Kennedy died intestate in the year 1895 and left surviving her her husband, William R. Kennedy, and her six children, all adults, as her heirs. After the death of Mrs. Kennedy, Mr. Kennedy paid two premiums on this policy, one March 1, 1897, and one March 1, 1898.

The policy contained a provision that:

After "three full annual premiums having been paid on this policy, the company will, upon the legal surrender thereof before default in the payment of any premium or within six months thereafter, issue a nonparticipating policy for paid-up insurance payable as herein provided, for the proportion of the amount of this policy which the number of full years premiums paid bear to the total number required."

On March 18, 1898, within the six months definitely specified in the paid-up policy provision, Mr. Kennedy, the insured and one of the heirs of his deceased wife to whom the original policy had been assigned, mailed an application to the company for a paid-up policy, and the same was issued in conformity with the terms of the original policy. The amount of the paid-up policy was seven hundred and fifty dollars. In other words, at the death of Mr. Kennedy the estate of Mrs. Kennedy would be paid seven hundred and fifty dollars by the insurance company. On June 4, 1904, Mr. Applewhite, at that time the sheriff of Lincoln county, was appointed the administrator of the estate of Mrs. Kennedy, and the United States Fidelity & Guaranty Company became

surety on his bond as administrator, and on June 15, 1904, Applewhite, the administrator, and William R. Kennedy, the payee in the policy, surrendered the policy in question to the insurance company and executed a joint receipt to the insurance company for two hundred and thirty-three dollars in full settlement and surrender of the policy. That the amount received by the administrator was the full cash surrender value of the policy is not controverted; in other words, the administrator was paid all the policy was worth at the time of the surrender of same was made. This money was paid by the administrator to William R. Kennedy.

After this time T. H. Montgomery, sheriff, qualified as administrator of the estate of Mrs. Kennedy as successor to Applewhite, administrator, and brought suit in the chancery court of Lincoln county against the Mutual Life Insurance Company, and R. C. Applewhite, the administrator, and the surety on his bond, the United States Fidelity & Guaranty Company, for the entire seven hundred and fifty dollars, claiming that the cancellation and surrender of the policy by the administrator Applewhite was void, because section 2065 of the Code of Mississippi of 1906 was not complied with, and that therefore the paid-up policy of seven hundred and fifty dollars was in full force and effect at the time of Mr. Kennedy's death. Section 2065 of the Code of 1906 is as follows:

"The court, or chancellor in vacation, on petition for that purpose, may authorize the executor or administrator to sell or compromise any claim belonging to the estate, which cannot be readily collected; but an order authorizing a sale of any claim shall not be made until after twelve months from the grant of the letters. The court or chancellor shall specify the terms, conditions, and notice of such sale. In compromising any claim the executor or administrator may receive property, real or personal, in his name as such, and he shall account for the same as assets of the estate. The executor or ad-

ministrator shall report, in writing, all sales and compromises to the next term of the court.''

The settlement of the policy above mentioned for its cash surrender value was made without the authorization of the court or chancellor in vacation, as provided in the above section. But the administrator received the full cash surrender value of the policy at the time the settlement was made. There is no showing of either negligence or fraud or other wrongdoing on the part of the administrator, and the only question here to be determined is whether or not he could make a binding agreement of settlement and acquit and discharge the insurance company without first having obtained the authorization from the chancellor in the manner provided in the Code section above mentioned. We think, where the administrator acts in good faith, a compromise by him of a claim or a debt due to the estate is valid and binding without previous authorization by the chancery court or the chancellor in vacation. *Long* v. *Schackleford,* 25 Miss. 559; *Gulledge* v. *Berry,* 31 Miss. 346; *Martin* v. *Tarver,* 43 Miss. 517; *Anderson* v. *Gregg,* 44 Miss. 170. This settles the case in so far as the insurance company is concerned.

The sum of two hundred and thirty-three dollars was paid by the administrator Applewhite to Mr. Kennedy. Kennedy, after the death of his wife, paid the premiums on the policy of ninety-seven dollars due March 1, 1897, and March 1, 1898, respectively, which inured to the benefit of his cobeneficiaries, and the settlement was made on the policy in 1904. The amount paid by him, with the legal interest thereon from the time of payment until the surrender of the policy, more than consumes the two hundred and thirty-three dollars paid by the administrator to him.

The chancellor dismissed the bill. We think he was correct in his finding, and the case is therefore affirmed.

*Affirmed.*