# SUPREME COURT,

## STATE OF KANSAS.

## JULY TERM, 1874.

PRESENT—HON. S. A. KINGMAN, CHIEF JUSTICE.
HON. D. M. VALENTINE, } ASSOCIATE JUSTICES.
HON. D. J. BREWER,

## SAMUEL LAPPIN v. JAMES E. MUMFORD.

1. CLAIM, OR DEBT, *is Personal Property.* A claim existing in favor of an estate for services rendered by the decedent in his lifetime, is personal property which may be sold by the administrator.

2. PERSONAL PROPERTY; *Sales by Administrator.* The legal title to the personal property of a decedent is vested in his executor or administrator, and except as restricted by provisions of statute, such executor or administrator can legally alien and dispose of any or all of such property.

3. ———— Section 63 of the Executors-Act does not restrict the power of sale. Its purpose is to enable the administrator or executor to obtain proper credit for doubtful claims without subjecting the estate to expense.

4. ———— *Order of Probate Court.* Where personal property is ordered by the probate court to be sold at private sale, and the court intends to impose no other than the statutory restrictions as to price, it is unnecessary to specify such restrictions in the order.

5. ———— The court may not order a private sale at less than three-fourths of the appraised value, and it may increase the limit to any extent deemed best for the interests of the estate.

6. PRESUMPTION; *Petition; Demurrer.* Where a party sues on a claim purchased from an estate, and alleges in his petition that the court ordered such claim sold at private sale; that it was sold, and an assignment to him made with the approval of the court, and gives a copy of such order and assignment; and it appears that such order

2—14 KAS.

and assignment are both silent as to the price, it will be presumed that both court and administrator complied with the requirements of the statute, and such a showing of a sale will be held sufficient on demurrer.

*Error from Nemaha District Court.*

IN November 1858 *Mumford* made a contract with James R. Herd, then a land-agent at Kickapoo, to locate a certain land-certificate held by *Mumford* on government lands situate in the Kickapoo land-district, for which services Herd was to receive five cents an acre, to be paid in lands selected at the price of one dollar an acre. Herd located 16,760 acres, for which (under said contract) he was entitled to receive 838 acres of land. Herd died in 1860. Said claim for 838 acres of land, or its value, remained unpaid. In October 1870 the probate court of Leavenworth county, "In the matter of the estate of James R. Herd, deceased," made the following order:

(*Title.*) "Upon the petition of George H. Rushmore, adm'r *de bonis non* of said estate, for authority to sell personal property of said estate, the following order is made by said probate court: The court having duly considered, examined, and filed the foregoing petitions, and being fully advised in the premises, *it is ordered*, that said administrator *de bonis non* sell the claim in his said petition mentioned at private sale, for cash in hand, and for the highest and best sum in his opinion obtainable for the same."

Under this authority said administrator, on the 24th of October 1870, sold said claim to plaintiff *Lappin*, the assignment thereof being as follows:

"For value received, and by authority in me vested by the order of the probate court of the county of Leavenworth, and state of Kansas, I, George H. Rushmore, administrator *de bonis non* of the estate of James R. Herd deceased, do hereby transfer, assign, and set over to Samuel Lappin, all right, title and interest of the said estate in and to the within contract made between James R. Herd and J. E. Mumford, by which the said Herd agrees to locate a certain quantity of land for said Mumford and for the heirs of Louis Lourimer. Witness," etc.

*Mumford* resided in Missouri at the time of making his contract with Herd, and ever since. In 1872 *Lappin*, assignee, as plaintiff, brought suit to recover the amount due on said contract, and caused certain lands of *Mumford* in Nemaha county to be attached. *Mumford* appeared and demurred to the petition. The district court, at the April Term 1873, sustained the demurrer, and from the order sustaining said demurrer *Lappin* appeals, and he brings the case here on error.

*W. W. Guthrie*, for plaintiff:

It is said that Lappin got nothing by his assignment, first, for want of *power* in the administrator to assign, and second, for want of *form* in assignment. And 39 N. Y., 196; 51 N. Y., 401; 31 How. Pr., 464, and 3 Hill, 612, are relied on. These were cases where authority to perform certain duties having been neglected by public authorities, upon proceedings *against* such officers to compel performance of these duties, it was held that such authority was *mandatory*, not *permissive*. That proposition has no application to any question involved in this case. *Ventres v. Smith*, 10 Pet., 167, also cited by defendant, not only fails to support his proposition, but decidedly maintains the contrary. See page 168: "The grant of the power carries with it all the usual, ordinary, and necessary means to effectuate the beneficial exercise of the power."

But, the power of an administrator exists at common law to settle and compromise: *Short v. Johnson*, 25 Ill., 496. It is insisted by Mumford that the administrator had no *power* to do anything with "claims, debts, or demands," except to receive the money from the debtor by ordinary collection; or compromise with the debtor; or turn them over to the heirs or creditors to make what they could out of them. In other words, that in all cases where it is not absolutely certain that the debt can be collected in full, the *debtor must* have the monopoly of shaving his own paper, or *certain* of the creditors the sole right to gamble on it; and if these resorts fail, that then the claim must be allowed to go to waste — that

§§ 62 and 63 of the executors-act are grants of power, in their nature excluding the exercise of any other in the disposition of "claims," and that the sale to Lappin was *ultra vires.* We think that they are *additional* provisions, to be exercised under supervision of the court in unusual cases where the expense of disposition might otherwise exceed the returns. This "claim" was a part of "the personal property belongng to the estate," and like a bond, note, or scrip, was the subject of sale; (§ 69, p. 445.) It was the subject of "specific bequests:" then why not of sale? But the authority to compromise with the debtor would authorize a sale to another when more could thus be realized. (*Ventres v. Smith,* supra.)

Questions of regularity in appraising, inventorying, etc., are not the subject of inquiry in this action in this court. But we insist that the probate court is a court of record, and that its adjudications cannot be collaterally attacked in this court. This rule applies in all cases where the court rendering the decision had jurisdiction: 12 Conn., 491; 30 Conn., 199; Freeman on Judgments, p. 94, § 123. In this state probate courts and district courts are authorized by the same constitution, each "having such jurisdiction as may be provided by law." (Art. 3, Const., §§ 1, 6, 8.) And to the extent of the jurisdiction thus conferred, the jurisdiction is equally general in each case. (10 Cal., 118; 34 Cal., 412.)

*A. G. Otis,* and *C. G. Foster,* for defendant:

1. We maintain that the demurrer was properly sustained by the court below. The petition and exhibits show that the plaintiff's claim is based wholly upon a pretended assignment to him from the administrator *de bonis non* of the estate of Herd, deceased. The so-claimed assignment is of a claim existing in favor of the estate of the decedent, against the defendant, Mumford. It seems to have been made under an order of the probate court of Leavenworth county, Oct. 24th, 1870, about twelve years after the death of Herd, who died in March, 1860. Now, if the assignment to plaintiff is invalid, either for want of authority in the administrator to make it, or of the court

to order and affirm it; or if the requirements and forms of the statute as to the powers and duties of executors and administrators were not complied with, then Lappin took no title to the claim, and has no cause of action against defendant.

. Under the constitution and laws of Kansas, the administrator has no authority or power to assign and transfer a chose in action, or claim existing in favor of the estate he represents; nor can the probate court confer any such power, or make valid any such assignment. The constitution, article 3, § 8, provides that the probate court shall have such *probate* jurisdiction as may be provided by law — limiting its jurisdiction to probate matters, and to such probate matters as shall be provided by law. See further as to the probate court being a court of limited jurisdiction, *Kirkpatrick v. The State*, 5 Kas., 678; 2 Ohio St., 228; 11 Ohio St., 390; 3 Iowa, 114; 3 Barb., 343; 11 Mass., 511; and cases cited in 8 Kas., 46. Being a court of special jurisdiction, it must follow strictly the terms and authority prescribed by law: 5 Kas., 354; 2 Washb., 570; 13 Cal., 577; 6 Wheat., 127 ; see also as to the sale of personal property, *Ventres v. Smith*, 10 Peters, 175.

In Gen. Stat., page 443, executors-act, § 62, is prescribed the duty of the administrator as to choses in action. He must collect the assets within one year, as far as he is able. Secs. 63 and 68 prescribe explicitly the duty of the administrator as to doubtful or desperate claims, or when the debtor is insolvent. These sections are complete in themselves upon this subject, and prescribe clearly and fully the course to be pursued, the remedy to be taken, and the manner of the adjustment between the administrator and the debtor. The rights of the heirs and the creditors are fully protected. There seems to us no implication that another and a wholly different remedy and course can be pursued, as has been attempted in this case. "May," in § 62, is to be construed as "must." 8 Kas., 628; 3 Hill, 612; 51 N. Y., 407.

Aside from the plain provisions of the statute, the policy of the law forbids the authority here sought to be exercised. It would open the door for fraud and collusion. Speculators

by skillful manipulation would buy these claims for a trifling consideration, and then invoke the aid of the courts to enforce full payment, to their own advantage, and to the injury of heirs and creditors. The law seeks to bring the embarrassed debtor and the representative of the estate together, without the interference of a *middle-man*, to the end that the claim may be compromised and settled to the best advantage of the estate.

2. But it may be urged that this claim is "personal property," and subject to sale as personal property. If so, then the attempted transfer is void. There was no appraisement as required by law. (See §§ 42, 46 and 47, and also § 61, of Executors Act.) These sections distinctly provide for an appraisement of all personal property, and an approximate estimate of the amount that can be collected on all notes, bills, claims, choses in action, and accounts due the estate. The order to sell at private sale, with no appraisement, and without providing that it should not be sold for less than three-fourths of its appraised value, is clearly unauthorized and void. (See § 71, Executors Act.) We insist that this claim is not personal property, within the meaning of that act, and the sections cited clearly draw the distinction between personal property to be appraised on actual view, and notes, accounts, etc., as to which it is made the duty of the appraisers to make an approximate estimate of what can be collected thereon. (Secs. 46 and 47.) Sec. 69 makes it the duty of the administrator to sell all the "personal property" within three months, which section construed with §§ 62, 63 and 68, clearly points out the distinction between those classes of assets. The law nowhere authorizes such claims to be *sold*. There is authority for a *compromise* under certain conditions and restrictions; or it may be filed for the benefit of the heirs or creditors; (§§ 63, 68.) In either view of this case, whether it be deemed a chose in action, and governed by §§ 63 and 68, or personal property and governed by the other sections referred to, the law has been disregarded and violated in this attempt to speculate in the assets of the estate.

3. The record and exhibits of the probate court are incomplete. It being a court of inferior and limited jurisdiction, nothing is presumed as to its powers. The complete record should have been produced. No order could be made without a petition therefor, and no order of sale at private sale could be made for less than three-fourths of the appraised value; § 70.

The opinion of the court was delivered by

BREWER, J.: The question in this case was raised on demurrer, and the substantial facts are these: One James R. Herd had in his lifetime a claim against the defendant for services performed in the location of a land-certificate. After his death, the claim not having been paid, the administrator *de bonis non* of his estate, by order of the probate court, sold and assigned it to this plaintiff. In reference to this sale

1. Sale by administrator of debt or claim. and assignment two propositions are asserted by counsel: First, that the probate court had no power to order, and the administrator none to make, such a sale or assignment; and second, that if the power existed it was not so exercised as to accomplish a valid transfer. In reference to the first proposition, we think the court had the power to order the sale of such a claim. At common law the full legal title to the personal estate of a decedent was vested in his administrator, and such administrator could dispose of it, passing a good title as freely and fully as the decedent himself could in his lifetime. His indorsement transferred the title to negotiable paper: *Reddick v. Moon,* 65 N. Car., 382; *Thomas v. Reister,* 3 Ind., 369; *Hamrick v. Craven,* 39 Ind., 241. In Dayton on Surrogates, at page 259, it is said: "But generally speaking an executor or administrator in his own lifetime may dispose of and alien the assets of the testator. He has absolute power over them for that purpose, and they cannot be followed by the creditors of the deceased." See also same volume, pages 307 and 310; Williams on Exec'rs, 562; *Anderson, Adm'r, v. Gregg,* 44 Miss., 170; *Booyer v. Hodes,* 45 Miss., 78; *Harth v. Haddle-*

*stone*, 2 Bay, 321. The provisions of our statutes, and similar ones in other states, prescribing the manner and conditions of sale are to be regarded rather as restrictions upon this otherwise absolute power than as original grants of power. The administrator, who, independent of such provisions could sell when he pleased, and upon such terms as suited him, responsible to the creditors and heirs only for reasonable fidelity in his trust, must now proceed in accordance with the regulations of the statute. Whatever an ministrator can do without an order, the court has power to order him to do. He has power, and it is his duty, to sell at public sale the personal property; and the term, "personal property," which, according to its ordinary significance, as well as its statutory definition, (Gen. Stat., p. 999, clause 9th,) includes such a claim as the one in question, is expressly in the section requiring him to sell, made to include such a claim. "The whole of the personal property belonging to the estate which is liable to the payment of debts and is assets in his hands to be administered," is the language used; (Executors Act, § 69.) It is true, bonds, notes, bills and accounts are not ordinarily sold, and in most cases ought not to be. They are regarded as personal property, in a sort of intermediate condition between goods and chattels, and money, the standard of value; as it were, the former in process of reduction to the latter. Hence, the interests of the estate are generally promoted by the collection rather than the sale of such property. But nevertheless they are personal property, and as such subject to sale. Nor does § 63, cited by counsel, remove this power of sale. The purpose of that section is to enable the administrator to obtain proper credit for doubtful claims without subjecting the estate to expense. It permits the court to authorize the administrator to compromise certain doubtful claims, or file them in court for the benefit of such heirs, devisees or creditors as will sue for them, and declares that such order of the court shall be a sufficient voucher. Granting authority to com-

*Margin notes:*

2. "Personal property" includes notes, claims, etc.

3. Power of sale. No statutory restriction.

4. Order of probate court.

promise, does not take away the power to sell. In regard to the second question we do not think it is fairly before us. We think the allegations of the petition are sufficient as against a demurrer. It alleges that the administrator was duly authorized to sell, by an order of the probate court; that in pursuance thereof he sold, and with the approval of such court executed and delivered a written assignment of such claim. The order of the court and the assignment are attached to the pleading. The first, after showing that a petition therefor had been filed, orders the administrator to sell "at private sale for cash in hand, and for the highest and best sum in his opinion obtainable for the same." The second is simply an assignment of the claim, declaring that it was made in pursuance of the order of the probate court. The order does not direct the administrator to sell for not less than three-fourths the appraised value, and the assignment does not show for what sum the sale was made, nor that it was for not less than three-fourths of such value. But we think it is unnecessary that this should appear either in the order or the assignment. The statute reads, "The probate

5. Appraised value; sale, etc.

court may order the executor or administrator to dispose of said personal property at private sale, at not less than three-fourths of its appraised value." (Gen. Stat., p. 446, § 71.) The statute fixes the lowest limit at which personal property may be sold at private sale, viz., three-fourths the appraised value. It authorizes the court to fix a higher limit. In ordering a private sale it may require four-fifths, or even the entire appraised value, or more. If the order is silent, the law fixes the limit; for this section must be understood, not as specifying the language of the order, and leaving all discretion as to the amount above the statutory limit to the administrator, but rather as limiting the

6. Presumption; compliance with law.

power of the court, and prescribing the amount below which the court may not order a sale. Here the order is silent. In the absence of any showing to the contrary we must presume that both court and administrator kept within the requirements of the law, and that the

sale was made for not less than three-fourths the appraised value. If it should hereafter appear that no appraisement was made, or that the sale was for less than three-fourths of the appraised value, it will be time enough then to consider the effect of such omission.

The judgment of the district court will be reversed, and the case remanded with instructions to overrule the demurrer.

All the Justices concurring.