PARHAM AND TOMLINSON, EXECUTORS, *v.* R. S. STITH, ADMINISTRATOR.

1. EXECUTOR. *Power in collecting debts. Accepting bill of exchange as conditional payment. Laches.*
   An executor, when not authorized thereto by the will, has no power by law to accept a bill of exchange as a conditional payment of a promissory note held by him in his official capacity, where the maker of the note is solvent. And if he does accept a bill of exchange in such case, and the same is not paid by the drawee, and the executor, the payee therein, fails to give the customary notice to the drawer, the latter, the maker of the note, is not discharged, by such laches of the executor, from his liability to the estate, but his obligation on the note continues as before the drawing of the bill of exchange.

2. SAME. *Accepting bill of exchange as conditional payment. Estoppel. Notice.*
   Where an executor, without authority of law, accepts a bill of exchange in
   payment, absolute or conditional, of the promissory note of a solvent debtor
   to him in his official character, the drawer of the bill is chargeable with
   notice of the disability of the executor to bind the estate by such transaction,
   is regarded as participating in a breach of trust by the executor, and, when
   sued upon the note by the executor, he cannot object that the executor, by
   failing to give him any notice of the dishonor of the bill, is estopped to bring
   such action.

ERROR to the Circuit Court of Marshall County.

Hon. H. W. WALTER, Special Judge, presiding by agree-
ment of parties, Hon. J. W. C. Watson being disqualified.

Parham and Tomlinson brought this action on a promissory
note payable to them as executors of the last will and testa-
ment of J. M. Lewis, deceased, against the administrator of
the estate of F. T. Leake, deceased. The defendant pleaded
payment, and gave in evidence a receipt by Tomlinson, in
which he acknowledged payment of the note by Leake, and
promised to cancel it, and send it to him by mail. The
defendant claimed that Leake paid the note by a bill of ex-
change. A description and history of the bill of exchange
are stated in the opinion of the court. The verdict and judg-
ment were in favor of the defendant, and the plaintiffs sued
out a writ of error.

*Featherston & Harris,* for the plaintiffs in error.

1. The plaintiffs in error could not legally accept any thing
in payment of the note but money, and only a payment in
money could discharge Leake or his estate from liability.
*Water Valley Mfg. Co.* v. *Seaman,* 53 Miss. 660; *Baughn*
v. *Shackleford,* 48 Miss. 255; *Elliott* v. *Connell,* 5 Smed. &
M. 91; *Hoggett* v. *Wade,* 10 Smed. & M. 149; *Bains* v.
*McGehee,* 1 Smed. & M. 220.

2. The executors could not accept the bill of exchange as a
conditional payment of the note, or as collateral security there-
for. The powers of executors and administrators are well
defined by law. These duties are, to collect the debts due the
estate, to pay off claims against it, and then to distribute the

balance of the assets according to the requirements of law or the directions of the will. For the accomplishment of these purposes, only a qualified title to the property of the estate is vested in the executor or administrator. *Wall* v. *Wall*, 5 Cushm. 458. And an administrator or executor can only exercise such powers as are conferred upon him by law or the will.

*Watson & Smith*, on the same side.

*W. S. Featherston* and *J. H. Watson*, of counsel for the plaintiffs in error, argued the case orally.

*R. S. Stith*, defendant in error, *pro se.*

1. The authorities cited for the plaintiffs in error do not sanction the rule that an executor has no power to receive any thing but money in payment of a debt to the estate. Executors may compound debts and enter into arbitrations, and such acts will be upheld, if fair, beneficial to the estate, and free from fraud, negligence, and misconduct. It hence results that if they collect debts "in bank-paper not strictly at par," where the interest of the estate requires it, their conduct will be sustained. *Bailey* v. *Dilworth*, 10 Smed. & M. 409 ; 2 Gratt. 116 ; 2 Lomax on Ex. 291 ; 5 Humph. 524 ; 2 Geo. 346. They may also assign or transfer negotiable securities belonging to the estate. *Hugh* v. *Bailey*, 32 Conn. 288 ; 10 Ill. 474 ; 18 Ill. 116 ; 3 Ind. 369 ; 15 Ind. 441 ; 7 Ired. 231, 235. I do not, however, contend that the executors had the power to accept the bill of exchange as an absolute payment of the note, but I do insist that they had the right to accept it as a conditional payment ; and that, having done so, they were bound, in their representative character, to due diligence in respect to the collection thereof.

2. By the settlement with the legatees, the note sued on has in reality become the property of Tomlinson, and the suit is prosecuted for his benefit. And even if the executors had no power to accept the bill of exchange as conditional payment, and the legatees have a right of action on the note, certainly the executor Tomlinson is estopped by his acts and laches to recover upon the note.

*E. M. Watson*, on the same side, filed a brief, arguing the points in the case and citing the following additional authorities.

1. As to the power of the executors to accept the bill of exchange as a conditional payment of the note : 2 Bla. Comm. (Cooley's ed.) 510 ; Perry on Tr., sects. 224, 225, 482, 806, 809–811 ; 1 Williams on Ex. 406 ; 2 *ib.* 609–612 ; 7 Cushm. 79 ; 2 Smed. & M. 687 ; 14 Smed. & M. 94 ; 12 Ark. 77 ; 41 Ala. 571 ; 13 Wis. 1 ; 1 Vt. 167 ; 2 Desau. 249 ; 35 N. H. 421 ; 6 Allen, 77.

2. As to the estoppel of the executor Tomlinson to sue on the note : *Farran* v. *Bragg*, 30 Ala. 261 ; 34 Ala. 40 ; Big. on Estop. 585 ; *Sloan* v. *Holcombe*, 29 Mich. 153 ; 4 B. Mon. 370 ; *Lambeth* v. *Elder*, 44 Miss, 80 ; 10 Pick. 77 ; 3 Texas, 93.

*R. S. Stith*, of counsel for the defendant in error, argued the case orally.

SIMRALL, C. J., delivered the opinion of the court.

The contestation is, whether the taking of the bill of exchange by Tomlinson, the executor, was a conditional payment of the note.

The note had been given by the intestate, Leake, for lands sold by the executors of Lewis, under a power conferred by the will, without an order by the Probate Court. When presented for payment, Leake paid $500 in Confederate treasury-notes, and gave an inland bill of exchange on A. Apperson & Co., of Memphis, Tennessee, for the balance. This transaction took place at Grand Junction, in Tennessee, near which place both parties, citizens of this State, resided, but in Marshall County, this State. The note was not given up by Tomlinson. The bill, which was dated the 3d of May, was presented for payment to the drawees the latter part of May or first of June thereafter ; but payment was refused unless the agent of Tomlinson, who made the presentment, would accept Confederate money, which he declined. The agent did not cause protest to be made, and notice to be given

to the drawer, which could *then* have been readily done.    The
cessation of the ordinary business of the city occurred several
days afterwards, when it was captured by the Federal forces.

The question which absorbs all others arising on these facts
is, whether the executor could take the bill of exchange as
conditional payment of a debt to the estate, and, by reason
of his laches, resulting in the discharge of the drawer (who
was such debtor), cause such payment to become absolute.

It is agreed on all hands that a creditor *sui juris*, who
takes from his debtor a bill of exchange as conditional pay-
ment, is bound to use, with respect of the bill, the diligence
exacted by the law-merchant, and that his laches will make
the payment absolute.    *Wadlington* v. *Covert*, 51 Miss. 631;
*Guion* v. *Doherty*, 43 Miss. 553.    Does that rule apply to an
executor or administrator?

A summary of the duties of the administrator and executor
is, that either shall pay off the debts of their intestate or
testator, collect the credits, and deliver over the surplus to
those entitled under the law or the will.    Each takes the
title to the choses in action and personal effects, *sub modo*, as
trustee for creditors, distributees, or legatees.

They are invested, under the law, with the legal title, in
order to relieve the estates of all liabilities and obligations
which decedents have imposed upon them, and hand over to
distributees and legatees the *net* balance.    Their power is to
*pay* debts, not to create new obligations.    They can collect
notes left uncollected, or which accrued to them afterwards on
a sale of property; but they cannot make obligations, and
thereby impose a liability on the estates or the assets in their
hands.    These principles are familiar, and thoroughly grounded
in our jurisprudence.

When the executor is charged with the duty of *collecting* the
debts, does the law confer on him any other discretion than to
accept payment in money, or that which is universally recog-
nized and accepted in the community as money?

To solve that precise question, let us see the attitude which

the executor sustains to the estate, as illustrated in various circumstances. In *Baines* v. *McGehee*, 1 Smed. & M. 220, the administrator was the purchaser. If the sale was not avoided, it was said that "the statutory mortgage would *operate* * * * for the use of those interested. He is usually the trustee for creditors and distributees, and when he puts himself in a position to defeat the trust, the *cestui que trust* can coerce it." McGehee, who was administrator, sold to Matthews, who paid McGehee. This payment did not discharge the debt to the estate. It was an individual transaction. "Payment to the estate was the only thing that could have discharged the mortgage."

In *Elliott* v. *Connell*, 5 Smed. & M. 106, Connell had sold the land as administrator. He was also guardian for the minor heirs, and took from the purchaser a new note, with *different* sureties, payable to himself as guardian, "purporting to have been for money loaned." Yet it was held that, since in truth the purchase-money was unpaid, "no change in the contract which would, in effect, discharge the statutory lien, and would operate a fraud upon the heirs, who were, substantially, the mortgagees, would affect their interests."

In *Hoggatt* v. *Wade*, 10 Smed. & M. 149, it is repeated that the statutory mortgage is for the benefit of the estate ; and the administrator, it was said, "ought not to be held (by construction) to have done any thing to its prejudice."

In *Dalton, Guardian,* v. *Jones,* 51 Miss. 586, the effort was to recover from the ward's estate, on a promise alleged to have been made by the guardian to pay for education, board, etc., and it was held that the guardian could not thus compromit his ward's estate. The "sum" to be expended must be fixed by the Chancery Court, and any excess was at the guardian's personal risk. See also *Hines* v. *Potts, ante,* p. 345.

In *Glenn* v. *Thistle, Executor,* 23 Miss. 45, the suit was upon a note given by the testator for land. The defence was that the title was bad, and there was a failure of consideration. This defence was attempted to be defeated

by proof that Thistle, the executor, was applied to by a party about to purchase the note, and that he said there was no offset to it. The court put this inquiry: Can an executor waive the defence of his testator? and answered it in the negative. A summary of the reasoning was: "If the promise of the executor is to have that effect, 'it is a new obligation;'" "but it is not his privilege to create new obligations;" "his duty is to pay existing ones." As to these, he stands in the "shoes of his testator;" "but the law does not clothe him with *discretion*, which the deceased was at liberty to exercise." He may bind "himself," but can "not render the estate liable for such promises."

In *Baughn* v. *Shackleford*, 48 Miss. 264, the wards and their husbands sought the enforcement of the statutory lien on land sold by their guardian, which was resisted because the guardian had given an acquittance for the purchase-money, in part, by obtaining credit on his personal account with Baughn, a purchaser. The guardian, in his accounts, charged himself, in settlements, with so much "money collected, and interest." After referring to several of the cases already cited, the court used this language: "The mistake made by the guardian, — and often made, — is the assumption that he has the same extent of authority to deal with the estate of the ward as with his own affairs." "The debt was due to the wards." "The guardian was the trustee constituted by the law to collect and appropriate for their use." And the result is stated, "that [this sort of trustee] cannot discharge the debt, or the statutory mortgage, to the prejudice of the *cestui que trust*, except upon the terms of receiving payment."

In *Presley, Superintendent*, v. *Ellis et al.*, 48 Miss. 580, 581, the same principle was applied to the lease of the sixteenth school section for ninety-nine years. It was held that the trustees could not release the lien on the land without payment.

In *McLean* v. *First National Bank*, 42 Miss. 112 (*s. c.*, *Isom, Treasurer*, v. *First National Bank*, 52 Miss. 905), it was

held that the bank acquired no title to the auditor's warrants, because it had notice that the warrants were intended to withdraw from the State treasury a trust fund (school money) which could not be diverted by the payee by an assignment as collateral, or in payment of his individual debt.

In *Water Valley Mfg. Co.* v. *Seaman*, 53 Miss. 660, it was assumed (without reference to the cases) to be the law that Mrs. Wagner could not release a mortgage given for the benefit of her wards. The court said : "Neither a guardian nor administrator can release without payment any valid security belonging to the trust estate. * * * The encumbrance remained, as well after the void release as before." The principle on which the court repudiated the assignment of the note by the administrator, in *Prosser* v. *Leatherman*, 4 How. 238, was that the administrator had the legal title as trustee, and, whilst he could transfer a chose in action for a purpose sanctioned by law, he could not do so if the disposition of it involved a violation of his trust, — as, an assignment in the purchase of property for himself.

The earlier English cases held that the guardian or administrator could assign the notes, bonds, etc., of the estate, although the consideration did not inure to the benefit of the ward or estate. Subsequently, Lord Kenyon, Master of the Rolls, in *Bonny* v. *Ridgard*, 1 Cox, 144, and, in *Scott* v. *Tyler*, Dick. 712, Lord Thurlow, overruled those cases, and held the doctrine that, if the assignee concerted with the executor to obtain the effects at a nominal price, or at a fraudulent undervalue, or in extinguishment of the private debt of the executor, contrary to the duty of the office of the executor, the purchaser would be a trustee. *Fisla* v. *Schuplin*, 7 Johns. Ch. 152. We conclude, therefore, that it is well settled by authority that the legal title which devolves upon the administrator or the executor does not confer absolute dominion over the effects and credits of the decedent, but that they hold in trust for the creditors, distributees, and legatees, and that any assignment or disposition of them, not warranted by law or the

will, which involves a breach of official duty, constitutes the purchaser (who has notice) a trustee, and makes him liable to the beneficiaries.

And, secondly, the executor cannot acquit and discharge a debtor of the estate, or any securities which he holds, upon any other terms than payment in money. If he takes from the solvent debtor a bill of exchange, as *conditional payment*, he assumes individually the responsibility of such a transaction, and has no discretion or power to impose on the estate the risks incident to his laches in respect of such paper, and the debtor is not thereby discharged from his obligation to the estate.

These principles do not conflict with the right of the executor to compromise a doubtful debt, nor do they conflict with his right to submit a disputed matter to arbitration, rather than the courts. The analogy would begin if he should assign the amount settled to be owing by the compromise on some consideration of benefit to himself, and not to the estate, or if he should essay to discharge the sum found due by the award, on any other terms than payment.

But it is said that the executor cannot sue upon the note, whatever may be the rights of the legatees to the money due upon it, and their remedies for its collection.

It was said, *arguendo*, in *Hogan* v. *Barksdale*, 44 Miss. 191, that there was close analogy between an executor and an agent. Those dealing with either must at their peril know the extent of his authority. Both act, not by virtue of inherent original right, but as delegates for others. Both bind others (if at all) by reason of authority delegated to them for that purpose.

Trustees, if they exceed or violate the authority confided to them, are personally responsible, though the motive was *bonâ fide*, and those who deal with them must take notice that their transactions are within the pale of their authority. *Vernon* v. *Board of Supervisors*, 47 Miss. 188. It was upon this principle that the cases of *Farley et al.* v. *Horn*, 45 Miss.

100, and *Emanuel* v. *Norcum & Burwell*, 7 How. 154, were decided. There, the administrator was completing a growing crop, or working the plantation from year to year, under the license of the Probate Court, and in each case it was held that he could not, in doing either, incur liabilities which would burden the general assets, and that creditors who aided with their means must be esteemed as looking *solely* to the crops as a fund for payment.

The executor is, as we have seen, under a disability to create a charge on the estate by his contract; so he is equally incompetent to acquit or release creditors without payment. For the same reason, those who take assignments of credits from him, for an improper or unlawful purpose, acquire no title; those who claim to be acquitted do not extinguish the debt to the estate unless they have made payment. In each instance, the parties who have the transactions with him know that he has no discretion, but acts under delegated power, which he must pursue.

When, therefore, Leake, the intestate, gave the bill of exchange to the executor, he was aware that he was substituting one contract for another, by which the executor promised that he would, in a reasonable time, present the paper to the drawees, and, if not paid, would give him prompt notice; otherwise, obligation on the note would be discharged. He was charged with notice that neither the law nor the will gave power to the executor thus to deal with the credits of the estate; and, being a participant in the act, which was a breach of trust and duty by the executor, he can claim no benefit from it. If that be so, his debt to the estate remained in the same condition it was before the bill was given. The note, not having been surrendered, continued the memorial of the indebtedness, and could be sued upon at law by any person who represented the estate, with power to collect and pay over its assets.

In the case reported in 5 Smed. & M., *supra*, Connell, the administrator, had made a constructive collection of the note,

and taken another, with different sureties, payable to himself as guardian, etc., yet he was regarded by the court as the representative of the estate, and as enforcing the collection for those concerned, and the proper party to sue.

So, in *Vernon* v. *Board of Supervisors, ubi supra,* the objection was made that the unfaithful trustee ought not to be allowed to bring the suit, but that the educable children of the county, the beneficiaries, ought to have been complainants. But the answer to that was, that the board were constituted by law the administrator of the fund, and that the suit was really for the *cestui que trust.*

But the arrangement between the executors and the legatees, in writing, was to the effect that the executors should, by suit, collect the note, and when the money was realized, pay it over to them. The suit is substantially for their use. The legal title to the note is in the executors; it has never, as a contract, been displaced, extinguished, or paid, and there seems, therefore, to be no technical difficulty in the way of this suit.

In the view which we have taken of the law (the facts are not disputed), there ought to have been a verdict and judgment for the plaintiffs. It would serve no useful purpose to discuss the instructions.

Judgment reversed and a *venire de novo* awarded.