THE ÆTNA LIFE INSURANCE COMPANY v. JENNIE M. SWAYZE, *as Administratrix, &c.*

ADMINISTRATOR — *No Power to Compromise Claim, etc.* An administrator has no power to compromise any claim, debt or demand belonging to the estate in his hands to be administered, and accruing in the lifetime of the deceased, so as to bind the estate, without the consent of the probate court.

*Error from Shawnee District Court.*

AT the April Term, 1882, of the district court, plaintiff *Jennie M. Swayze,* as administratrix of the estate of J. Clarke Swayze, deceased, had judgment against the defendant *Ætna Life Insurance Company,* which brings the case here. The opinion states the nature of the action, and the facts.

*M. T. Campbell,* for plaintiff in error.

*J. H. Moss,* for defendant in error; *A. L. Williams,* of counsel.

The opinion of the court was delivered by

HORTON, C. J.: The substantial facts in this case are: J. Clarke Swayze insured his life in the Ætna life insurance com-

pany for the benefit of his estate, in the sum of $1,000. He made all the payments required of him in his lifetime, and in all respects complied on his part with the terms and conditions of the policy of insurance, and this contract was in full force at the time of his decease. After his death, Jennie M. Swayze was appointed and qualified as the administratrix of his estate. The estate is indebted to several persons in a sum exceeding $2,000, unpaid, and the heirs and next of kin of the decedent are Jennie M. Swayze the widow, and also Oscar K. Swayze, Horace G. Swayze, and J. Clarke Swayze, minor sons of the deceased. After the death of the intestate, his administratrix made proof of that fact as required by the insurance policy, and made demand of the payment due thereon. Subsequently, and on or about the 8th day of September, 1877, the insurance company, by its authorized agent one J. C. Webster, came to the administratrix in person, and represented to her that the insurance company did not intend to and would not pay the sum of $1,000 on the insurance policy belonging to the estate of the intestate; that the insurance was void, and nothing could be collected thereon; that the company was possessed of large funds to contest the insurance in the court, and in case an action was brought against the company on the policy, the company had determined to and would expend more than the amount thereof to hinder, delay and defeat the collection of the insurance. These and other representations of like kind greatly alarmed and intimidated the administratrix, and when the agent of the company offered her the sum of $600 in full payment and compromise of the sum of $1,000 due upon the policy, being alarmed and troubled by the threats and statements of the insurance agent, she agreed to take the $600 tendered, and thereupon delivered over to the insurance agent the policy. On the 14th day of December, 1877, the administratrix applied to the probate court of Shawnee county to confirm and ratify her acts in compromising with the insurance company, and after a hearing thereon, the court refused to ratify and confirm the compromise, and instead thereof, ordered the administratrix

to collect from the company the sum of $400, being the balance due on the policy.   On January 11, 1878, the administratrix brought this action in accordance with the direction of the probate court, to recover the $400.   The insurance company demurred to the petition, alleging that no cause of action was set forth therein.   The trial court overruled the demurrer, stating as a reason therefor that the administratrix had no authority to compromise the claim specified in the petition, belonging to the estate of J. Clarke Swayze, deceased, without the consent of the probate court of Shawnee county.   The insurance company stood by its demurrer, and the court heard the evidence sustaining the allegations in the petition.   It treated the $600 accepted by the administratrix as part payment, and gave judgment for the remainder, the said sum of $400.

Upon the part of the insurance company it is contended that the administratrix had full power to compromise the claim, and that her settlement with the company for $600 was conclusive and binding upon the estate of which she was the legal representative.   In support of this proposition, it is said that our statute does not restrict the common-law powers of administrators to compromise debts, but only provides a way by which they may do so with greater safety to themselves by securing the approval of the probate court; that the object of the statute is not to confer upon administrators powers which otherwise they would not possess, but to afford them additional protection when acting in good faith in the exercise of their common-law powers. (*Choteau v. Suydam,* 21 N. Y. 179; *Chadbourn v. Chadbourn,* 9 Allen, 173; *Chase v. Bradley,* 26 Me. 531.)

On the part of the administratrix, it is urged that administrators in this state have no common-law authority to allow, classify, arbitrate, compromise, or pay claims; that it was the intention of the legislature, by the adoption of the provisions in the "act respecting executors and administrators and the settlement of the estates of deceased persons," approved February 28, 1868, to confer upon administrators full and ample

power, under the control and direction of the probate court, to settle estates of decedents; that the statute is ample to meet all emergencies, and that administrators have no power in these respects excepting that conferred by the statute; that as § 63, chapter 37 of said act, provides a method for compromising claims, debts or demands belonging to the estate of an intestate and accruing in the lifetime of such intestate, no authority is given administrators to do anything in the way of compromising such claims, debts or demands without the order or consent of the probate court.

Said § 63 reads:

"Upon the proper proof being made by an executor or an administrator to the probate court that any claim, debt or demand whatsoever, belonging to the estate in his hands to be administered, and accruing in the lifetime of the deceased, represented by such executor or administrator, cannot be collected: *first*, on account of the doubtful solvency or actual insolvency of the person owning the same; *second*, on account of such debtor having made a voluntary assignment for the benefit of his creditors under the laws of this state, or having availed himself of any of the bankrupt laws of the United States; *third*, by reason of some reasonable or equitable defense which such debtor or debtors shall allege and make appear against the same; *fourth*, on account of the smallness of such claim and difficulty in its collection, either from the remoteness of the residence of the debtor, or the ignorance of the executor or administrator of such residence; said court may order such claim, debt or demand to be compromised or filed in such court for the benefit of the heirs, devisees or creditors of such deceased person, as will sue for or recover the same, giving the creditors the preference if they or any of them apply for the same before the final settlement of the estate; and such order of the court shall be a sufficient voucher to such executor or administrator."

In our opinion, in this state the provisions of the statute restrict the powers of administrators under the common law, and do not simply afford them additional protection in the exercise of those powers. The interests of creditors and of the heirs of an estate are not benefited by extending or enlarging the authority of administrators beyond the provisions

of the statute.  It was held in _Lappin v. Mumford_, 14 Kas. 9,
that the provisions of our statutes prescribing the manner and
conditions of sale by administrators are to be regarded rather
as restrictions upon this otherwise absolute power, than as
original grants of power; that the administrator who, inde-
pendent of such provisions, could sell when he pleased and
upon such terms as suited him, responsible to the creditors
and heirs only for reasonable fidelity in his trust, must now
proceed in accordance with the regulations of the statute.
We said in _Collamore v. Wilder_, 19 Kas. 67, that an adminis-
trator is merely the agent or trustee of the estate, acting im-
mediately under the direction of the law prescribing his duties,
regulating his conduct and limiting his powers. (See also _Han-
son v. Towle_, 19 Kas. 282; _Clawson v. McCune_, 20 Kas. 337;
_Brown v. Evans_, 15 Kas. 88; _Black v. Dressell's Heirs_, 20
Kas. 153.)

The authorities cited contrariwise are not strictly appli-
cable.  In _Chadbourn v. Chadbourn_, supra, it was decided
that—

"By conferring on courts of probate jurisdiction to author-
ize executors or administrators to submit demands in favor
of or against estates in their hands to arbitration, or to com-
promise them, the legislature intended only to give security
and protection to these officers in the exercise of that authority
with which they are clothed by the common law."

This decision is based solely upon the doctrine that the rule
of common law in force in Massachusetts, prior to the adop-
tion of the statute, was not repealed thereby, as it was not
clearly apparent that the legislature intended to abrogate the
common law in adopting the statute relating to the arbitra-
tion and compromise of demands in favor of or against estates.
We judge that _Chouteau v. Suydam_, supra, and _Chase v.
Bradley_, supra, and similar decisions in other states, were
decided upon like reasons.  In this state, the provisions of
the common law remain in force in aid of the general statutes
of the state, and where a whole subject has been revised by
the legislature, the common law is superseded by the statute,

unless it is needed to help out or aid the statute. In Massa-
chusetts, when the early settlers "came into this new world,
they claimed the common law as their birthright, and brought
it with them, except such parts as were judged inapplicable
to their new state and condition. The common law thus
claimed was the common law of their native country, as it
was amended or altered by English statutes in force at the
time of their emigration. Those statutes were never reënacted
in that state, but were considered as incorporated into the
common law." (*Commonwealth v. Knowlton*, 2 Mass. 534.)

Kansas was annexed to the United States in 1803, as a
part of the territory bought from France, under the general
designation of Louisiana, and in Louisiana the civil, not the
common law, prevailed then and prevails now. The terri-
torial legislature of Kansas enacted the following statute:

"The common law of England, and all statutes and acts
of parliament in aid thereof, made prior to the fourth year
of James the First, and which are of a general nature, not
local to that kingdom, and not repugnant to or inconsistent
with the constitution of the United States and the act entitled
'An act to organize the territories of Nebraska and Kansas,'
or any statute law which may, from time to time, be made or
passed by this or any subsequent legislative assembly of the
territory of Kansas, shall be the rule of action and decision
in this territory, any law, custom or usage to the contrary
notwithstanding."

In the revision of 1868, § 3 of chapter 119 prescribes:

"The common law, as modified by constitutional and stat-
utory law, judicial decisions, and the condition and wants of
the people, shall remain in force in aid of the general stat-
utes of this state; but the rule of the common law, that stat-
utes in derogation thereof shall be strictly construed, shall
not be applicable to any general statute of this state, but all
such statutes shall be liberally construed to promote their
object."

Therefore, in our opinion, the decisions holding that the
statutes empowering the courts of probate to authorize admin-
istrators to pay, arbitrate and compromise demands in favor
of and against estates, do not repeal by implication or other-

wise the settled rule of the common law in force in those states, are not controlling in Kansas. (See *Fox v. Van Norman*, 11 Kas. 214; *Reitzell v. Miller*, 25 Ill. 68; *Clark v. Hogel*, 54 Ill. 227; *Stagg v. Lennefiser*, 50 Mo. 341; *Cape Girardeau County v. Harbison*, 58 Mo. 90; *Parham v. Steth*, 56 Miss. 465.)

As under our statute the duties and powers of administrators are so clearly defined and limited that they cannot exercise authority contrary thereto or in excess thereof, and as the administratrix of J. Clarke Swayze, deceased, never presented any application to the probate court for authority to compromise the claim of the estate of the decedent against the insurance company, before attempting so to do, and as the probate court never consented to or ratified the attempted compromise, but directed the administratrix to proceed to collect all due on the insurance policy, the trial court committed no error in overruling the demurrer to the petition, and in rendering judgment upon the evidence as prayed for.

Upon the other questions presented, we do not think there need be any comment.

The judgment of the district court will be affirmed.

All the Justices concurring.