## HIRAM HAGAN *v.* F. BARKSDALE.

1. LAST WILL AND TESTAMENT—AUTHORITY OF EXECUTOR.—Where a testator directs in his will, that all his property of all kinds shall be kept in the hands of his executor until all his children shall become of age, but allowing each to withdraw his portion as he comes of age, and directs that the executor shall continue to cultivate his lands with the negroes he then owned, and the crops, after paying the expenses of the plantation, and the clothing and education of his children, to be applied to the purchase of negroes, and such other property as the wants of his family might require; the executor derives no authority to create debts which will bind either the estate devised, or the devisees or legatees.

SAME.—The common law, as affirmed by repeated decisions of this court, is, that an executor or administrator has generally no power to create liabilities or to impose burdens on the estate; and if the executor would create any liability with which to charge either the estate, the legatees or devisees, his power to do so should clearly appear in the will.

Appeal from the chancery court of Yazoo county. CAMPBELL, J.

In 1848, Hiram Hagan died, leaving a will, which has been duly probated. By its terms, all his property was to be kept in the hands of his executors, until all his children became of age, or married; each one being allowed to withdraw his or her share, as he or she became of age, or married. It required the executors to cultivate the plantation with the slaves; and the proceeds of the crops were to be applied to the payment of the expenses of the plantation, and the clothing and education of the children; the residue to be applied in the purchase of slaves and other property, as the wants of the plantation might require. An equal division of all the property was to be made when the youngest child should marry or come of age—the wife to have a child's part. The executors appointed in the will qualified, and afterward died, or resigned, and James W. Barnett was appointed administrator *de bonis non*, with the will annexed, in 1855, and acted until January, 1866, when he died. Previous to his death, the widow had died, and the youngest child had come of age and married. Barnett delivered the property over to the defendants, who now hold it under the provisions of the will, undivided. He applied to the probate court to make a final settlement of his administration, but

died before it was completed, and it appears by his account filed, that the estate is largely indebted to him.   No further administration has been granted on the estate of Hagan.

In 1861 and 1862, the firm of Barksdale & McFarland, at the request of the administrator, Barnett, furnished a considerable amount of supplies and necessaries for the plantation, then carried on under direction of the will, and for the support and maintenance of the children.   The estate of Barnett (as also those of his sureties on his administration bond), is largely insolvent.   This debt remains unpaid, and to recover it, the complainant, Barksdale, as survivor, filed his bill in the chancery court of Yazoo county, against the heirs and devisees of Hiram Hagan, deceased.   Upon final hearing, the complainant had a decree for the amount due, and costs; from which decision defendants appealed.

*Miles & Epperson,* for the appellant.

It is manifest that the account sued on was a legal demand against Barnett, and against him alone; the goods were bought by, and the credit given to him.   27 Miss., 150; 13 S. & M., 79.   The heirs of Hagan · were neither parties nor privies to the purchase.   At most, the administrator had but a mere legal demand against the appellants.   27 Miss., 149; and it does not fall within that class of cases to which the doctrine of substitution attaches.   Story's Eq., §§ 398, 493, 502, 567, 589, and 635.   Still less tenable is the provision that the sale of goods to the administrator created a trust against the heirs.   The elementary books and adjudged cases alike exclude the idea that a trust can be raised in such a case.

It is urged that the executor being required to carry on the plantation, has a right to contract debts for that purpose, and that the same are binding on the estate.   The executor is not bound to accept the trust, but if he does, he must do so on the present ready means of the estate, or upon his own means or credit, reimbursing himself out of the annual income.   27 Miss., 150, 151; 29 Miss., 246, 247.

Executors and administrators possess no such power, either by statute or common law, and traders who sell to them must look to them for payment, leaving it to the probate courts to deal with the fiduciaries.

*George L. Potter*, on same side.

It suffices for the decision of this case, that the will gave no authority to contract the debt sued for. This point has been decided by this court in the case of Ward v. Harrington, 29 Miss., 238, where the will contained like provisions. The general rule is, that although the will directs the executors to carry on the business of the testator, they do it at their own risk. The risk of loss follows the executor, whilst the profits, if any, belong to the estate. 2 Williams, Ex'rs, 1625, 1626. The will in this case expressly directs that the expenses of the place and of the family, be paid out of the proceeds of the crop. That settles the matter. But even if the will gave authority to purchase supplies on credit and bind the estate, this claim could not be sustained. The supplies are admitted to be plantation and family supplies. If Barnett, administrator, cultivated the plantation in 1861, as complainant assumes, then the supplies were not bought by him, or under his supervision, but all that matter was left to the inexperience and bad judgment of the children, as is clearly proven by complainant's own witness.

The estate of Barnett is utterly insolvent, and yet they say that even though this claim be not a charge on this estate in favor of complainant, it is a debt due to Barnett's estate, when it pays complainant, and, therefore there is a right of subrogation, whereby complainant may recover from the estate of Hagan. But it is submitted that no such result can follow. If this demand is only a claim against Barnett's estate, then it is not superior to that of any other creditor of that insolvent estate, and complainant cannot appropriate to himself exclusively, what belongs equally to all the creditors of that estate.

*Wilkinson & Bowman* for the appellee.

It is the imperative duty of the administrator to keep the property together, and carry out the wish of the testator. 33 Miss., 646 ; 38 ib., 331. The evidence in the case shows the custom to be universal to buy plantation supplies on a credit, and hence it follows that the testator, in directing his plantation to be cultivated, evidently intended to authorize the administrator to contract debts for that purpose. If a testator directs his executor to carry on his business, and the executor does so, he makes the estate so employed under the will, as well as himself, liable for debts contracted. 2 Lomax on Ex'rs, 285 ; *Ex-parte* Garland, 10 Vesey, 120, 121, 122. The terms of the will do not limit the administrator to the income. It only says that the residue of the proceeds of the crop, after payment of expenses, shall be invested in negroes. The right to purchase supplies by the executor for the plantation and family was incidental to the power and duty to keep up the plantation and support the family. Redfield on Wills, 289 ; Blanton v. King, 2 How., 856 ; Singleton v. Garrett, 23 Miss., 197.

The decree of the probate court allowing this debt in the final account, the testimony of Morrison and Mobly, as also the answer, prove clearly that this account was necessary for the execution of the trust of the will. Peter v. Beverly, 10 Peters, 565 ; Osgood v. Franklin, 2 Johns. Ch., 20. As to the implied power of executors, see Peter v. Beverly, 10 Peters, 566 ; Downs v. Fanning, 2 Johns. Ch., 254. Where the executor has given his own note in settlement of an account against an estate, the creditor has his option to proceed against the executor, or by bill against the estate. Woods v. Ridley, 27 Miss., 150 ; Peter v. Beverly, 10 Peters, 566, 567. See also, Farve's heirs v. Graves, 4 S. & M., 711 ; Robb v. Griffin, 26 Miss., 580 ; Archer v. Jones, ib., 589 ; Wood et ux. v. Ford, 29 ib., 63, 64, 65.

The legatees and distributees have no just claim upon the estate, except for the residuum after the payment of debts. 2 Story's Eq. Jur., §§ 1250, 1251 ; Riddle v. Moss, 2 Cond.

Rep., 270, 271; Riddle & Co. v. Mandeville; 2 Story's Eq., § 1246. Upon the final settlement of his accounts, the whole of his previous administration was received. All the matters of administration come before the probate court, and chancery cannot undertake to review an administration account. It is *res adjudicata.* Singleton v. Garrett, 23 Miss., 197; Stubblefield v. McRaven, 5 S. & M., 140; Jones et ux. v. Irvine's exrs., 23 Miss., 364; Stein v. Stein et al., ib., 533; Bacon v. Cohea, 12 S. & M., 519; Marsh v. Mandeville, 28 ib., 127.

SIMRALL, J.:

F. Barksdale, surviving partner of McFarland, deceased, filed his bill in the chancery court of Yazoo county, against the legatees and devisees of Hiram Hagan, deceased, to recover from them an account for goods, etc.

In 1848, the testator, deceased, having made a last will and testament, which was duly probated, the executors, named in the will, either died, or resigned their office, shortly after their appointment, and in 1855, Jas. Barnett was designated and qualified as administrator " *cum testamento annexo,*" who acted as such until his death in 1866. The will is made an exhibit to bill; so much of it, as is material to this controversy, is in these words: "It is my wish that all of my property of all kinds, be kept in the hands of my executors to be hereafter named, until all my children become of age, at the same time allowing to each one, as he or she becomes of age, to withdraw his or her portion. It is also further my wish, that my executors shall continue to cultivate my lands with the negroes I now own, and the proceeds of the crops after paying all necessary expenses of the plantation, and the clothing and education of my children, to be applied to the purchase of negroes and such other property as the wants of my family may require."

In 1861, Barksdale & McFarland supplied family and plantation goods to the amount of $1,587 31, at the request of Barnett, the administrator.

The youngest child did not attain majority until several years after the account was contracted.

The question for discussion and decision, is:    Are the legatees and devisees, or the property derived under the will of the testator in their hands, liable to this debt?

It is a well established principle of the common law, affirmed in repeated decisions of this court, that an executor or administrator has generally no authority to create liabilities or to impose burdens on the estate.

Ordinarily, the duty of the executor is to collect the assets, pay off creditors, and hand over the residue to those entitled under the will.    For this purpose he is a trustee, clothed with legal title, as to choses in action and personal effects.

If it be sought to charge the estate or the legatees with any liability of his contracting, the power so to do must be pointed out in the will, and the act done must be brought within the scope and terms of the power.

It is incident to the dominion which the owner has over his property, that he may confer a power on his executor to deal with it as the last testator has prescribed (so that no rule of law be violated).

Those dealing with an executor are in the precise attitude of those who do business with an agent; in either case they must know, at their peril, the extent and measure of the authority.    Both are acting, not by virtue of an inherent, original right, but as delegates for others.    Both bind others (if at all) by reason of authority delegated to them for that purpose.

Barksdale & McFarland did business with Barnett, to whom was committed the execution of the will of Hagan, on the distinct understanding that the acts of Barnett were obligatory or not on the legatees and devisees, as Barnett did or did not conform to the power granted by the will.

Looking to the will itself as its best interpreter, and gathering from it the surroundings of the testator, and we find him in these circumstances:    A cotton planter with land and negroes, a wife and minor children; about to leave behind

for these objects of his bounty, a property ample for their support and the education of the children, and above this, a surplus, which, as it accrued, was to be invested to add to the corpus and productiveness of the property. He contemplated that his widow and children should reside on the plantation, and be maintained out of its annual products and income. As the children severally attained their majority, his or her portion should be withdrawn, and when the youngest child became of age, partition to be made. The testator evidently believed that this scheme could not be interfered with by creditors. He did not think that he was embarrassed with debt.

The carrying out of this plan was entrusted to the executors.

It will not be pretended that the executor (if he should conceive that it would conduce to the interest of the family and increase of the estate) had the power and the will to " purchase any sort of property " on a credit, and impose a debt therefor on the widow and children, or on the estate of Hagan. The reason is very plain. The power is not conferred. Such purchases can only be made out of the " proceeds of the crops. " Large discretion is placed in the executors as to the purchase of property. It may be real or personal; it may be in town or country; but it must be paid for out of the " income of crops. "

The goods furnished by Barksdale & McFarland, were for the benefit of the family and plantation. But what provision did the testator make for paying for them. The proceeds of the crops are first dedicated to pay " the expenses of the plantation, and the clothing and education of the children," etc. The " crops " is the fund set apart by the testator to pay the expenses, not the body of the property.

There is a strong analogy between this case and that of an administrator or executor authorized to finish a growing crop. The statute declares that the proceeds of the crop shall be assets, subject to debts, legacies, and distribution. " The taxes, expenses, etc., of making or gathering the crop,

being first deducted." In the construction of this statute, where a creditor had furnished necessaries for making the crop, in Emanuel v. Norcum & Burnell, 7 How., 154, it was said that creditors of this description can look to no other fund than the crops. And he who deals with the administrator " takes upon himself the risk of profit." Such creditors are entitled to full payment, notwithstanding the estate may be insolvent, for their claims extend not to the property in general, but to a particular fund, the profits of the crop, that part only being general assets, which are in excess of the expenses.

This statute does not more distinctly point creditors who make advances to the administrator to finish the " growing crop," to the proceeds of the crop, as the means of payment, than does the will of Hagan refer creditors, who contribute necessaries to the plantation and family, to the " proceeds of crops," as the fund to which they must look.

If Barnett had year after year, wasted the income, would the remedy of creditors like Barksdale, survivor, be against these plaintiffs in error, or against Barnett, and the sureties on his bond ? Would the claim against the legatees and devisees be at all strengthened by the fact, that the principal and sureties were insolvent? The satisfactory response would be, that the creditor dealt, with knowledge of the power of Barnett, and the fund indicated for payment, and took the risk. In Ward v. Harrington, 29 Miss., 246, the will directed the executors to keep the property, consisting of a plantation and slaves, together until certain of his children attained majority, and to apply the income of the property to the payment of his just debts, and the maintenance of his family. The executor created a large account with a merchant, for the benefit of the estate, upon which judgment was confessed by the executor. Executions were levied on property which had come to certain parties as legatees, and the point involved, was it a right to subject this property. The court rest their judgment exclusively on a construction of the will, and say, " that the will gives the executors no power to encum-

ber the property left by the testator, by the creation of new debts, or by the assumption of new liabilities—their power extended only to the proceeds and income of the estate."

˄It was said by Lord Rosendale, in Kirkman v. Booth, 11 Beav., 273, 280, to authorize executors to carry on a business or trade, there ought to be the most distinct and positive authority, and direction given by the will for that purpose.

In Oatbush v. Oatbush, 1 Beav., 184, the testator directed his widow to carry on the business until his youngest child should attain the age of twenty-one, and for that purpose, gave her the "entire use, disposal, and management of the capital stock and effects, which should be due, owing, or belonging to him in his trade, at the time of his decease." It was held by the master of the rolls, that the specified property only, and not the general assets, was liable for debts contracted by the widow in carrying on the trade.

In making provisions for the payment of debts, if the testator designated a particular fund, that is construed to exclude any intention to appropriate a more general fund for the same purpose. If he direct a particular person to pay, he is presumed in the absence of all other circumstances, to intend him to pay out of the funds with which he is instructed, and not out of funds in which he has no control. 2 Story Eq. Jur., § 1247.

We are of opinion, that neither according to the case stated in the original and supplemental bills, nor agreed statement of facts, was the complainant entitled to relief against the defendants.

Wherefore, we reverse the decree, and render judgment here dismissing the complainant's bill.