## E. PFEIFER *v.* BARTLETT SMITH et al.

Will — Power of Executor to Charge Legatees.

An executor of a will has no power to create debts to charge legatees unless it is clearly given by the will.[1]

Appellant, Pfeifer, filed his bill in the Chancery Court of Lincoln county against appellees, who were legatees under the last will and testament of Bartlett Smith, deceased, in which he seeks to subject lands devised to defendants to the payment of a debt to him contracted with him by the executor of Smith's will after the death of the testator. The will was made an exhibit to the bill. It appears from the will that the testator devised all his property, real and personal, to his children, defendants, giving them the title on his death. It further provided that the property devised should be kept together "and said plantation carried on as

---

1

Where a plantation is caried on by an executor under a will, which simply empowers him to do so, the executor has no power to incumber the *corpus* of the estate by contracting debts for plantation supplies beyond the income. And such debts, if created, cannot be levied on the *corpus* of the estate: Ward *v.* Harrington, 7 Cush. 238.

And the rule is the same where the will directs the executor to carry on the farm till the youngest child arrives at full age. He has no power to make a debt a charge on the estate, unless his power to do so clearly appears by the will. Hogan *v.* Barksdale, 44 Miss. 186.

Where a will after sundry devises, gave the executor power to manage and control the residue of testatrix's estate for the benefit of her nephews until the youngest became of age, he was justified in building a ginhouse thereon out of the proceeds of a year's crop from the whole estate, without order of the court. Henry et al. *v.* Henderson, 81 Miss. 743; 33 So. 960.

In the absence of a statute authorizing it, an administrator has no authority to incur debts binding on the estate, except for incidental expenses in the due course of administration. Farley *v.* Hord, 45 Miss. 96.

Although under Code 1857, p. 448 (Code 1871, § 1156; Code 1880, § 2063; Code 1892, § 1882), the court may authorize an administrator to cultivate and gather a growing crop and, if it be to the interest of the estate and not prejudicial to the distributees, to continue to cultivate the farm of intestate until final settlement, debts incurred for supplies to make the crop, while a primary charge on the proceeds thereof, cannot be charged upon the general assets of the estate. Creditors furnishing such supplies must take

it is at present under the supervision of my executor hereinafter appointed," until the children should arrive at maturity, and as each child became of age it should have its share of the personalty and the real estate was to be divided only when the youngest child became of age. The executor made crops on the land of the testator and in doing so contracted the debt to complainant. Defendant's demurrer to the bill was sustained and the bill was dismissed. From that decree complainant appeals.

APPEALED from Chancery Court, Lincoln county, H. S. VAN EATON, Chancellor.

Affirmed, February 24, 1883.

*Attorneys for appellant, Sessions & Cassedy.*

the risk· of the sufficiency of the crop to pay them. Farley *v.* Hord, 45 Miss. 96.

Where an executor allows the mercantile business in which the testator was interested to be continued by the surviving partners, just as before the death, the estate is not liable for debts thereafter contracted, nor does the insolvency of the firm at the time of the death change this rule, since property then owned should be appropriated to the payment of debts then due, in order that the estate may, to that extent, be relieved from liability. Insurance Co. *v.* Ligon, 59 Miss. 305; Avery *v.* Myers, 60 Miss. 373.

Where the will does not expressly so direct, the cost and expenses incurred by an executor in cultivating crops in due course, pursuant to art. 96, p. 448, Code 1857, do not constitute a charge upon the *corpus* of the estate. His power to charge the estate with the expenses of cultivating lands extends only to the income. For such expense he may incur a personal liability, but he has no power to bind the general assets, and a balance found to be due him for such expense on final settlement cannot be made a charge upon the *corpus* of the estate.. Hardee *v.* Cheatham, 52 Miss. 41.

One advancing supplies to an administrator who makes a crop on the decedent's land by permission of the court, under section 1156, Code 1871, must rely alone upon the crop, and cannot subject the body of the estate; but, in such case, if the administrator applies the proceeds of the crop to the payment of general creditors, the person making the advances is, in equity, entitled to be subrogated to the rights of such creditors against the general assets. Evans *v.* Robertson, 54 Miss. 683.

Advances made to an administrator to aid in putting in the crops on the estate represented by him entitle the one making such advances to be paid out of the crops grown by means thereof, and the administrator has authority to sell sufficient of them to discharge such debt. Starling *v.* Wyatt, 27 So. 526.

*Attorney for appellees, R. H. Thompson.*

Brief of Sessions & Cassedy:

In the case of Hagen *v.* Barksdale, 44 Miss. 190, which is re-lied upon by counsel for appellees as conclusive in his favor, the court says: "If it be sought to charge the estate of the legatees with any liability of his (executor's) contracting, the power to do so must be pointed out in the will, and the act done must be brought within the scope and terms of the power." And again, "It is incident to the dominion which the owner has over his prop-erty that he may confer a power on his executor to deal with it as the testator has prescribed, so no rule of law is violated."

The will of the testator (Bartlett Smith, Sr.), in this case, after providing in the first item for the payment of his debts, in the second bequeaths all of his property to his children, naming them. Then in the next, the language of that will is: "It is my will and wish that the above named property shall be kept on my plantation, and said plantation *carried on as it is at the present time,* under the supervision of my executors hereafter appointed." And further provides that as the children severally arrive at "law-ful age" the personal property then on the place to be valued by three commissioners to be chosen by the executors, and the child so arriving at lawful age to receive his or her share in value to be paid by the executors. The real estate to remain undivided until the youngest child attained his majority, when the same should also be divided.

He appointed his brother, Joseph A. Smith, and his son, W. F. Smith, executors. By a codicil of the same date as the will, the testator directs that one of his daughters (who was then of age) should be paid her part of the personal estate, less $250 before that time advanced to her by the testator—and further, that his son, W. F. Smith, one of the executors, "be allowed reasonable wages out of the proceeds of the crop made each year on my plan-tation." If it was the intention of the testator that the plantation should be "carried on" by purchasing as they might be needed, necessary teams, tools, supplies, etc., on a credit, and that the articles to be so bought should be charged on his estate, then under the authority referred to, and the rule established that the "will is the law of the case," the bill is maintainable. The language used in the will is, to repeat: "Said *plantation* (to be) *carried on,*

*as it is at the present time."* The bill and amended bill distinctly charge that at the time referred to by the testator and during his lifetime the plantation was "carried on" by the purchase of supplies, etc., on a credit to make the crop of each year. The language of the amended bill is: "The said testator died possessed of little or no money and it was impossible for the executor to cultivate the plantation, buy supplies, gather and market the crop, without obtaining credit from some one, and that was the manner in which the said plantation was carried on," to use the phraseology of the last will of decedent, at the time the will was made on the 9th of December, 1872. It (the amended bill proceeds to charge) was because of this authority given the said executor that your orator extended credit to him as such. And your orator further avers that it was well known to all parties interested in said estate, that the plantation was being conducted under said will, and the supplies, team, tools, etc., necessary to conduct the same and to make crops thereon were being bought on a credit as during the life of the testator, and all parties in interest took the risk of the venture contemplated and provided for by the testator, and would have reaped the benefits thereof had any accrued, and are in equity, your orator claims, equally liable, by the subjection of the property of the estate, to bear the losses resulting from failure in crops, from destruction of property, etc., whereby the executor became indebted." In passing it may not be amiss to state that this court (reversing the rule of the chancellor) in a case here several years ago, upon proof of the destruction of buildings by fire and the impracticability of continuing to cultivate the plantation advantageously, directed the division of the lands and personal property before the youngest child arrived at lawful age, the time fixed in the will for partition. The case referred to is the case of W. F. Smith, Exr. (the same Smith who contracted the debt now sought to be enforced) *v.* Calcote et al., not reported.

If then it was the intention of the testator that the executor should contract liabilities to make the crops, the property is liable. It was a question of fact to be determined by the chancellor from the evidence whether the allegation of the bill was true, that during the lifetime of the testator and at the date of the will, the plantation was "carried on" as it was, to wit: on the credit system, by the executor afterwards. If it was, then the testator never intended that the executor should take the risk himself of the

seasons, drouths, storms, cotton worms, and all the other perils and risks incident to such business. He could not have expected such an unreasonable thing of his son and brother, and that he could not have contemplated that the business would be conducted on a cash basis is further shown by the allegation of the bill that he died possessed of little or no money.

The second point made for appellees is that one of the executors having failed to qualify, it was incompetent for the remaining executor to execute that requirement of the will which provided for the continuance of farming operations. There was no discretion vested in the executors to determine whether the plantation should be carried on—the will was mandatory in that respect, and had both failed to qualify, it would have been proper for an administrator with the will annexed to have carried out its provisions in this regard. So we claim that this does not belong to the class of cases referred to in Clark *v.* Hornthal, 47 Miss. 449, and in Bartlett *v.* Sutherland, 24 Miss. 395, where the court says: "Where a power to act is conferred upon two or more and it is dependent upon their judgment whether the act shall be done or not, the power conferred in such case is a special trust or confidence reposed in the judgment of all and without the concurrence of all the power cannot be exercised." It was never contemplated by the testator that the failure of one or both of the executors to qualify should defeat the will. Moreover, he provides in the codicil for compensation for his son, the executor who did qualify, evidently expecting and intending him to manage the farm.

Brief of R. H. Thompson:

This was a bill in chancery by appellant, Pfeifer, against the legatees under the last will and testament of one Bartlett Smith, deceased; the complainant seeks by his will to subject the lands devised to a debt, contracted with complainant after the death of the testator, by one of the executors named in the will.

To the complaint and the amended complaint, the above named defendant demurred, and the court below having sustained the demurrers and the suit having been dismissed, the complainant has prosecuted an appeal. The only question before this court arises on the demurrers.

The bill was filed May, 1881, and a copy of the will is made an

exhibit. By the terms of the will, as shown by the bill as well as by the exhibit, the testator devised all his property, real and personal, to his children, the defendants, giving them the title on testator's death; a present interest, at death of testator, passed to the children. It was directed that the property devised should be kept together "and said plantation carried on as it is at the present time under the supervision of my executors hereinafter appointed," until the children should arrive at maturity, and as each child became of age its share of the personalty was to be delivered to it—the real estate was to be divided only when the youngest child should become of age. Two persons were appointed executors.

Upon the death of the testator only one of the executors named in the will qualified. This executor made crops on the lands of the testator and in so doing contracted the debt due to complainant.

The only questions, therefore, are whether the direction in the will that the executors should "carry on" the plantation authorized them to subject the real estate to debts contracted by them; and, second, if it did, the authority being to two, can one of the two charge the land?

The following authorities are conclusive in appellees' favor: Hagan v. Barksdale, 44 Miss. 186, and authorities there cited; Opinion of Peyton C. J., in Clark v. Hornthal, 47 Miss. 434; Norton v. Philps, 54 Miss., Appd. 105, U. S. S. C. Rept.

It is respectfully submitted that the special causes of demurrer were well taken.

Opinion.—*Per curiam:*

This case we must regard as settled by the adjudication in Hogan v. Barksdale, 44 Miss. 186; and Ward v. Harrington, 24 Miss. 238.

*Affirmed.*