J. M. Thompson & Co. v. Lamar County Agricultural
High School et al.

[78 South. 547, In Banc.]

1. School and School Districts. *Agricultural high school.*
*Contracts. Power of board.*
Under Laws 1910, chapter 122, and Laws 1912, chapter 150,
authorizing agricultural high schools and empowering the
trustees to control the property and do all things necessary
to the successful operation of the school, the board of
trustees have no authority to contract debts, nor hypothecate
the funds raised by taxation to the purpose of supporting or
boarding students and hence could not delegate such power to
the principal of the school; the boarding of students not
being a public purpose.

2. Schools and School Districts. *Agricultural high schools.*
*Contracts. Duties of contractor.*
Persons selling goods on the order of the principal of an
agricultural high school, must know the law and know the
extent of the powers of the principal of the school as well
as of the school trustees, and must look alone to the
individuals with whom they contracted.

Appeal from the circuit court of Lamar county.
Hon A. E. Weatherby, Judge.

Suit by J. M. Thompson & Company, against the
Lamar County Agricultural High School and A. B.
Talbert. From a judgment for defendant, plaintiff
appeals.

The facts are fully stated in the opinion of the court.

*Salter & Hawthorn,* for appellants.

The school is the board of trustees, and *vice versa*
the board of trustees is the school. It might as plaus-
ibly be said that a suit against a corporation could
not be maintained because against the corporation by
name instead of against its board of directors.

Lamar County Agricultural High School is merely the name of this corporation, or *quasi*-corporation, as it may be termed, and its affairs are managed by its board of trustees just as the affairs of a corporation are managed by its directors, of a county by its board of supervisors, or of a municipality by its mayor and board of aldermen.

We think that the case of *Connell et al.* v. *Woodward et al.*, 5 Howard 665, practically settles this, the court there saying: "They might have sued under the general title of trustees of schools and school lands, and having the power to do so, the rule is not varied because the names of the several persons who composed the board have been stated in the pleadings."

Is there a different rule to be applied to schools and school districts, than applies to counties, municipalities, or other corporations or to individuals? We say that a thorough search of the authorities throughout the United States, fails to disclose to us a single such distinction. This then drives us inevitably back to the central question in this case, and the one that controlled the lower court in sustaining appellee's demurrer. Can the Agricultural High School be sued at all?

If it can be sued at all, then the same rules of pleading and evidence must apply to appellee as applies to any other defendant in a justice court, whether it be individual, private corporation, *quasi*-corporation, county or municipality.

This question has never been settled in this state by direct holding of this honorable court, and we think that in view of the fact there is now a very great number of agricultural high schools in the state, as well as consolidated school districts and rural school districts, constantly making contracts and necessarily so if they may successfully operate, there ought to be a direct ruling on this point, so that the public may

know whether it can make a contract with these schools that can be enforced in the courts or not.

We respectfully ask the court to settle this vexed question once and for all, and if desired, will gladly file additional briefs on this phase of the case. This suggestion of error is respectfully submitted, trusting and believing that same will be sustained, or if not, the court will say, once and for all, that schools cannot be sued.

*Tally & Mayson,* for appellee.

1. Does the law of the state authorize suits against Agricultural High Schools? That question can be best determined by a consideration of several matters. It will be necessary to determine the character of the corporate entity to which an institution of that kind belongs; the object or end of its creation and the duration or extent of its life; the powers conferred either express or implied; its relation to the sovereign power of the state of which it is an inferior agent.

The principle is fundamental that neither the general government nor the state can be sued, except in cases where they expressly, through statute, consent to be sued, nor can the state be sued, except on such claims or demands as the auditor has authority to audit. *Gulfport Export* v. *State et al.,* 112 Miss. 452, 73 So. 281.

Since an Agricultural high School is the creation of the state, in its sovereign capacity, what then is its relation to the state and in what instance is it subject to action or suit? The state of course delegated to its agency certain powers. It is a parcel and part of sovereignty operating in a very limited sphere and with certain well-defined powers. "*Imperium in imperio*" as Hamilton, in the Federalist, expressed the relation of the several states to the general government. It being necessarily admitted that the school

was endued with life by legislative act we must look to the act in question to determine the measure of its powers and its liability to action or suit.

"Civil corporations are of different grades or classes, but in essence and matter they must all be regarded as public. The school district or the road .district is usually invested by general laws operating throughout the state with a corporate character, the better to perform within and for the locality its special function, which is indicated by its name. It is an instrumentality of the state and the state incorporates it that it may the more effectually discharge its· appointed duty. ,. . . They are purely auxiliaries of the state; and to the general statutes of the state they owe their creation and the statutes confer upon them all the powers they possess;' prescribe all the duties they owe, and impose all liabilities to which they are subject. Considered with respect to the limited number of their corporate powers, the bodies above named, rank low down, in the scale or grade of corporate existence; and hence have frequently been termed *quasi*-corporations. 1 Dillon Mun. Corp. (4 Ed.), p. 25.

The law creating Agricultural High Schools in this state provided for the levy of a tax to support the schools; a board of trustees for the government of the schools; also prescribing the duties of the trustees with reference to the receipt and disbursement of funds.. Acts of 1910, ch. 122, Hemingway's Code, secs. 3420, 1-6. In no event could the tax levy exceed two mills. Acts of 1910, ch. 122, 123.

Page 3 of same act confers upon the trustees the· only power they have: control of the property, fixing salaries of teachers and doing things generally, for the successful operations of · the school, while page 6 places on the trustees the obligation to keep and make statements in detail as to receipts and disbursements.

Nothing is said in the original acts or in the acts supplemented thereto about the right to sue and be·

sued. The right to sue and the liability to be sued is usually set out in the charter governing statutes of a municipal corporation proper. Most municipalities act in a dual capacity, public and private. In its private capacity, such as operating light plants, waterworks, etc., a municipal corporation is liable on principle and to same extent as a private corporation. The functions of an agricultural high school are wholly public. It is supported by public taxation; created by legislation and unless it was in the legislative contemplation that all or a portion of the annual tax should be donated for the purpose of paying board for the pupils, the power to levy a tax for that purpose does not exist. We say that it cannot be gainsaid that an agricultural high school does not, and cannot perform any private duties; that the *cacaothes accrescendi* did not exist in the legislative mind which created it and therefore it inevitably follows that the power to sue does not exist. The right to sue it must be expressly conferred by the state or it cannot be asserted. 2. Has the board of trustees of an Agricultural High School power to contract an indebtedness for boarding students, and is the school, if suable, liable for supplies for boarding students?

The proper solution of this question is to be determined by an examination of the several statutes on the subject. We have heretofore briefly adverted to the existence *vel non* of this power. If it was the intention of the law-maker to authorize the trustees of the school to contract debts for boarding pupils it was an easy matter to have voiced that intent in the act; since that authority is not conferred in express terms, its existence is denied. Before the enactment of the law it did not exist. The statutes then are enabling statutes. Enabling statutes on the theory of "*expressio unius exclusio est alterius,*" prohibit by implication the doing of any act other than those enumerated in the act, or exercise of any power other than in the statutory mode, designated by the act.

If anyone whether trustees or teacher had power to contract debts for boarding students the tax and donations should have been graduated in proportion to students in attendance. It is believed that a glance at the catalogue issued by the school authorities from time to time, will reveal that many of the students were from other counties. In that event the query necessarily arises, if the tax-payers of any county, in addition to providing dormitory facilities and teachers should be taxed to board students from other counties.

Other considerations forbid the inference that the trustees have power to contract a debt for boarding pupils. Such a power if attempted to be exercised would be not only *ultra vires* in all that term implies as we have attempted to demonstrate, but would be *malum prohibita;* it would not only be an unlawful diversion, but a criminal perversion of the funds of the institution. The school was ordained and established for no ephemeral purpose; but like the common law, civil and eleemosynary corporations has the right to perpetual succession. While the tenure of office of those vested with authority to manage its affairs is of short duration, yet the contention is seriously advanced that those evanescent creatures are clothed with an authority to create a debt that will impair or destroy the *corpus* of an estate designed for perpetuity.

Etheridge, J., delivered the opinion of the court.

J. M. Thompson & Co., wholesale grocers of Philadelphia, Pa., filed a suit in the justice court of Lamar county against Lamar County Agricultural High School and Professor B. A. Tolbert for certain groceries sold to B. A. Tolbert, principal of Lamar County Agricultural High School, for use in boarding students in that institution, amounting to one hundred, ninety-two dollars and six cents, with interest. The orders for these groceries were signed, "Lamar County Agricultural High School, per B. A. Tolbert." In the justice court

there was a judgment against B. A. Tolbert and the Lamar County Agricultural High School jointly. From this judgment Tolbert appealed to the circuit court, and the case against the Agricultural High School was brought to the circuit court by *certiorari,* and the point raised that the Agricultural High School could not be sued, and that it was not liable upon the contract and account upon which the suit was based. The circuit court held that the Agricultural High School was not liable on account, and not subject to be sued, and from this judgment Thompson & Co. appealed here.

Several interesting questions are presented in the record, among which is presented the question as to whether or not the Agricultural High School can be sued at all, under any circumstances; and, second, has the board of trustees of an agricultural high school the power to contract an indebtedness for boarding students, and is the school, if suable, liable for supplies for boarding students? We deem it unnecessary to decide at this time any of the questions presented in the record except the one last stated. We have reached the conclusion that the Agricultural High School is not liable upon the contract sued on because there was no power under the law in the trustees to make any such contract and to divert the funds of the Agricultural High School for the purpose of paying board for students in such an institution. The act creating the Agricultural High School provides that the school may be established by the county school board of any county for the purposes of giving instruction in the high school branches, theoretical and practical agriculture, domestic science, and such other branches as the board may hereafter provide for and make a part of the curriculum, subject to review and correction by the state board of education. The act then provides that, when such school has been established by the school board, the board of supervisors shall levy on the taxable property of the county an annual tax

levy for the support of the Agricultural High School, and that, when the taxes are collected, they shall only be 'used for the support and maintenance of the particular school for which the tax is levied, provided such tax shall not exceed two mills for each school established in any one year, and providing for provisions for holding an election for the purpose of avoiding the levy under certain conditions unnecessary to mention. The government and control of the Agricultural High School in any county is vested in a board of five trustees and the statute says:

"The trustees shall have control of the property, elect and fix salaries of all teachers in the agricultural department of the school and shall have full power to do all things necessary for the successful operation of said school."

It was further provided that when the state superintendent of education shall have received from the county superintendent of education of any county a statement showing that an agricultural high school had been located by the school board, and that the necessary land had been acquired, and the tax levy made by the board of supervisors, and suitable buildings had been erected, including a boarding department where not less that forty students may have dormitory and dining room facilities, the state superintendent shall visit such school, and after a thorough inspection shall report to the state board of education. And, should it appear to the state board of education that it would be to the interest of the state, such board shall draw an order on the auditor in favor of the county treasurer for the sum of one thousand, five hundred dollars for the use of the trustees of the high school or schools, but no more than one thousand, five hundred dollars shall be paid to any one county in any one year for agricultural high school purposes, except in case where

two or more counties join in a joint school. And the act provides for a detailed statement to be made to the board of supervisors of receipts and disbursements by the trustees, and that the county superintendent shall transmit to the state superintendent, a copy of such statement, which shall be embraced in the state superintendent's next biennial report to the state legislature. A careful and painstaking study of the laws bearing on agricultural high schools convinces us that it was not the purpose of the legislature in creating agricultural high schools that the funds set apart to such schools should be expended in boarding pupils. No such power appears in the act, and we think that none can be implied, taking the act as an entirety. The fundamental purpose of the establishment of the school is to give instruction in the high school branches and in theoretical and practical agriculture and domestic, science. The powers of the trustees are enumerated as above set out, and embrace the power to control the property, to elect and fix the salaries of teachers, followed by a general clause, "and shall have power to do all things necessary for the successful operation of the school." The boarding of pupils is not a public purpose. It is a private affair, and while under certain conditions a dormitory may be erected whereat students could have opportunity to procure board, it was not intended that the funds of the institution should be used in conducting a boarding house. The trustees have not been given power to contract debts nor to hypothecate the funds raised by taxation to the purpose of supporting or boarding students. The trustees had no authority to contract a debt for groceries and supplies for boarders, and consequently could delegate none to the principal of the school.

The appellants must know the law and know the extent of the powers of the principal of the school as

well as of the school trustees, and must look alone to the individuals with whom it contracted.

The case was affirmed on a former day of this court without an opinion, and this opinion is written in response to a suggestion of error, and the suggestion of error is accordingly overruled.

*Overruled.*

Stevens, J. (dissenting). I unreservedly dissent. This case originated in a justice court. After judgment was duly rendered against the trustees of the Agricultural High School, the case was carried to the circuit court by *certiorari,* and not by direct appeal. The main battle ground of this case, the point upon which I understand the circuit court denied plaintiff anything, is the proposition contended for by counsel for appellee that an agricultural high school is an agency of the state, and cannot be sued. We are earnestly asked by counsel for appellant to decide this question. It is a question of farreaching importance to all the agricultural high schools of the state, a question which lies at the very threshold of this litigation, and a question which, in my judgment, should be decided by the court. This question as to whether the trustees as a *quasi*-corporation may sue and be sued is the one and only delicate question presented for decision. Inasmuch as the opinion of the court expressly remits any expression on this point, I deem it unnecessary to state my personal views. But the court in sidestepping this question proceeds to the holding that the trustees of an agricultural high school cannot operate a boarding department, and cannot either contract for supplies or authorize the principal to contract for supplies for the dining room. I cannot concur in this view of the statute. But first let me say that the question is not properly presented. The only pleading required in the justice court was an itemized statement of the account.

In the circuit court this statement of account is met by a demurrer. The learned circuit judge sustained this demurrer, and from his ruling appellant, as plaintiff in the court below, prosecutes this appeal. There was no testimony whatever taken or introduced to show the terms of the contract, the purpose for which the goods, wares, and merchandise were purchased, the use to be made of them, or even to show that the trustees operated a dining room. But, assuming that the supplies sued for were intended for the boarding department or board of the students, the trustees, in my judgment, have full power and authority either to buy these supplies or authorize the principal of the school to buy them. The original statute providing for the establishment of agricultural high schools (chapter 122, section 3, Laws of 1910) expressly provides:

That "the government and control of county agricultural schools in any county shall be vested in a board of five trustees," and that "the trustees shall have control of the property, elect and fix salaries of all teachers and employees, and shall have full power to do all things necessary to the successful operation of said school."

Another provision of this statute provides that:

"No school shall be recognized by the state board of education as an agricultural high school until at least twenty acres of land have been acquired."

Section 6 of the act requires the trustees to make and render to the board of supervisors a detailed statement of all receipts and disbursements, while section 7 authorizes them to be the sole judges of the eligibility and fitness of any student who seeks admission. Section 5 of the act expressly requires that an agricultural high school shall have the minimum amount of land provided and to have suitable buildings, "including a boarding department where not less that

forty students may have dormitory and dining room facilities." It is a condition precedent that an agricultural high school shall have this boarding department, and that this boarding department shall have a sufficient number of bedrooms and "dining room facilities" for forty students. The act further provides for instruction in "practical agriculture" and "domestic science." By the act of 1912 (chapter 150, Laws of 1912) the board of supervisors are authorized to issue bonds for the purpose of establishing and equipping agricultural high schools, but the proceeds of these bonds "shall be used only for the establishment, equipment, erection of buildings, purchasing lands, live stock, or other necessary improvements." I make the statement here that under the original and amended act all funds, whether derived from taxation or from bonds, are to be disbursed by the board of trustees of the Agricultural High School. Not a dime of the funds of the school can be disbursed without the express approval of the trustees. Not a contract can be made except with their approval or by their ratification. If the trustees cannot make a contract, then no one for the school can do so. The board of supervisors have no such authority, although the trustees must account to the board of supervisors for all receipts and disbursements, and must look to the board for the levy of necessary taxes. When the law is amended by chapter 186, Laws of 1914, "the government and control" is still "vested in a board of five trustees," and these trustees "have full power to do all things necessary to the successful operation of said school." The powers of the trustees are limited only by the general purposes for which the school is established. Whatever is necessary to the successful operation of the school the trustees may do, even to the extent of "all things." Power could not be con-

ferred in broader terms than those employed in this statute.

In my judgment, the court by one blow has destroyed the agricultural high schools of our state. By the simple fiat of the court the trustees can no longer operate the boarding department. Under the opinion of the court they cannot do the very thing which they are required to do before the school can be classified or be called an agricultural high school. The school must have a dormitory and dining room facilities for forty students before it can be classified as an agricultural high school and before it is entitled to state aid. If the trustees cannot buy or at least cannot authorize to be purchased the necessary food for the dining room, then the erection of a dining room is futile and foolish. The dormitory and dining room are, of course, erected upon lands belonging to the school. If the trustees have no authority to buy supplies or provisions, they certainly would not have the authority to lease out the property to an independent contractor. If the authority to buy supplies must be expressly enumerated, then certainly the authority to lease out the property to a stranger would have to be expressly enumerated. But such a strict construction of the statute is not justified either by authority or reason. Not a single authority is relied upon by the court for its holding, and none can be found, either homemade or imported. An agricultural boarding school in the rural districts cannot be operated without the purchase of provisions for the dining room. We have all heard many jokes about the proverbial college boarding house and what seems to the student as inadequate or short rations. But the court has gone the college boarding house keeper and Herbert Hoover one better—all food whatever is forbidden the agricultural high school boys. The only way now to operate such a school is to convert it into a Boy

Scouts' camp, where each fellow must "carry his own skillet" and cook his own grub. It is difficult for me to picture the opening day of an agricultural high school, well equipped with the necessary buildings, dormitory, and dining room, if the trustees cannot beforehand provide this dining room and kitchen with the necessary tables, chairs, stoves, knives, forks, spoons, dishes, and other utensils, and have on hand the necessary provisions to be cooked and served. Some one must have these provisions bought and on hand, must employ cooks and servants, and have the boarding department ready for operation. This necessitates the making of contracts before the school opens. If the trustees cannot lawfully contract for these supplies, they could not take the cash and go buy them. If they did, they would spend cash for an unlawful purpose, and would be personally liable for misappropriation of funds. The result of such holding would be that the trustees cannot do the very thing for which the school is chartered. Such a school cannot be founded in a city near hotels, inns, and boarding houses. Necessarily it must be established in the country on at least twenty acres of land, and be a place where the students may do practical agriculture. The products of their experimental farm are to be used upon the common boarding table, and all the students meet at the common board. It does not follow from these views that the trustees may not require boarding students to pay the equivalent of their board in cash or in advance. They are certainly empowered to make reasonable rules and regulations as to the admission of students and the amount to be charged or the expenses to be prorated. It has been refreshing to observe the success of our State Normal College and its dining room department operated upon a great co-operative plan. The very fact that the supplies for such an institution can be bought by the institution

itself at wholesale prices is an advantage. After the supplies are bought and consumed, the expenses at the end of each month can be easily prorated amongst the students. So it will be on a smaller scale at each of our agricultural high schools. It is interesting to note that by express terms of the statute the trustees are authorized to buy live stock for the institution. Can it be said that the trustees may not buy food for the animals? To ask the question is enough to answer it. There is no doubt in my mind about the authority of the trustees to feed the animals, whether mules or boys. The statute expressly confers the necessary power. There are now forty-eight agricultural high schools in the state. I dare say that in all of them the trustees have made contracts which the court now condemns. These institutions serve a good purpose, and I for one am not willing to destroy them by the mere *fiat* of the court.

COOK, J., concurs in the foregoing dissent.