TOLER et al. v. LOVE, SUPERINTENDENT OF BANKS et al.

(Division B. May 14, 1934.)

[154 So. 711. No. 31176.]

C. E. Gibson, of Monticello, for appellants.

254

Flowers, Brown & Hester, of Jackson, for appellees.

**Ethridge, P. J.,** delivered the opinion of the court.

H. T. Toler, N. A. Ward, W. C. Williamson, and O. N. Ward, filed a bill in the chancery court of Lawrence county against the Bank of Monticello, J. M. Bass, the liquidating agent of said Bank of Monticello, J. S. Love, Superintendent of the banking department, and M. M. Neal, alleging that the complainants H. T. Toler and W. C. Williamson are residents of Jefferson Davis county, and that N. A. Ward and O. N. Ward are residents of Lawrence county, and that they are citizens, patrons, and taxpayers in the Oakvale consolidated school district, and are, therefore, interested parties to file this bill, as well as for and on behalf of all the other patrons and taxpayers in said district. The bill also alleged that the Bank of Monticello is a banking corporation now in liquidation by the state banking department, and that J. S. Love is the state superintendent of banks; that W. E. Hathorn, E. C. Bryant, H. J. Bourn, Zollie Daniels, and Knox Polk, as trustees of the Jefferson Davis Lawrence school district, executed a deed of trust to A. C. Brinson as trustee for the Bank of Monticello to secure a loan of one thousand thirty-five dollars and thirty-three cents, giving a deed of trust dated September 4, 1929, on the property described in the bill, which was alleged to be school property. Thereafter, on January 6, 1931, the Bank of Monticello was closed and its affairs, as stated, were turned over to J. S. Love, superintendent of banks, and are being administered under his direction. That on the 12th day of July, 1932, J. S. Love appointed M. M. Neal as trustee instead of A. C. Brinson, and that said M. M. Neal pro-

ceeded to advertise the land described in the bill for sale to be sold on the 22d day of August, 1932; that the property on which said security was given is a part and parcel of the property owned by the Oakvale consolidated district, and that the trustees were without authority to incumber the property of said school district, which is a taxing district supported and operated, in whole or in part, by taxes levied and collected in said district; and that the debt contracted by the board of trustees with the Bank of Monticello is an interest-bearing debt, and that no election was held in said district authorizing the incurring of said debt by said trustees, as required by law, and it was not, therefore, authorized by a majority of the electors of said district. It is further alleged that before said Bank of Monticello closed its doors for liqidation it had collected four hundred dollars on said indebtedness, and that said collection was illegally made and should be refunded to said Oakvale consolidated school district.

Complainants allege that since the deed of trust is void it, in no wise, conveyed any title to the trustee, and none can be conveyed by the trustee at any sale made thereunder, but, if sold, it would cast a cloud upon the title of said property of said Oakvale school district, and that said deed of trust should be canceled and held for naught; the debt contracted by said board of trustees should likewise be canceled; and that the state banking department should be required to refund to said school district the amount illegally paid on said indebtedness, to-wit, the sum of four hundred dollars.

It appears from the record that F. L. McGahey and his wife, Felton McGahey, on September 4, 1929, executed a warranty deed to W. E. Hathorn, E. C. Bryant, Zollie Daniel, H. J. Bourn, and Knox Polk, as trustees of the school district, and their successors in office, conveying the land described in the bill, which deed was recorded on September 7, 1929, and on September 6, 1929, an order

was signed by the trustees directing a pay warrant issued to Dr. F. L. McGahey for one thousand dollars, to purchase a teachers' home, payable out of the school funds, which sum was paid. It further appears that the trustees deposited the one thousand dollars received from the Bank of Monticello to the credit of the school funds, and that at the time this deposit was made there was eighty dollars and some cents to the credit of said school fund, and that this money received from the bank was paid out to Dr. McGahey as above stated.

There is no pretense that there had been an election by the voters of the district authorizing said loan, or a petition signed by a majority of the qualified electors directing the trustees to make said loan.

By section 5978, Code 1930, it is provided that no interest-bearing debt, except as provided in section 5977, Code 1930, shall be incurred in any county, municipality, or other taxing district, unless authorized by a majority of the electors in an election called for that purpose; but that this shall not prevent the borrowing of money in anticipation of the collection of taxes.

Section 5981 provides that any taxpayer may institute suit for damages on the bond of officials required to give bond for violation of this section.

The duties of school trustees are defined by section 6630, Code 1930, and it does not authorize trustees to incumber school property, or to borrow money on the credit of any school district.

Section 6643, Code 1930, authorizes the issuance of bonds for consolidated school district under certain conditions therein prescribed, which requires a majority of the qualified electors residing in the district to petition that such bonds be issued and sold for the purpose of erecting, repairing, and equipping school buildings, teachers' homes, school barns, transportation vehicles and for purchasing lands for schools.

⸱ There is no pretense that this section was complied with in securing the loan from the bank in the case at bar.

The court below dismissed the bill holding that the complainants would be required to do equity as a condition of the relief prayed for, relying upon Vernon v. Board of Police, 47 Miss. 181, Natchez v. Mallery, 54 Miss. 499, and other cases. In our opinion, these cases are not applicable to the case at bar, because here the enforcement of the rule to repay the loan would, in effect, defeat the policy of the law prohibiting the incurring of debts without a vote of the qualified electors of the district, and prohibiting the purchase of lands or buildings by interest-bearing ⸱bonds or obligations without a majority of the qualified electors voting for same as required by the foregoing statutes. The equity maxim that he who seeks equity must do equity will not be applied when to do so would defeat or contravene a public policy of the state. See Young v. Ashley et ux., 123 Miss. 693, 86 So. 458; McDonald v. Sanford, 88 Miss. 633, 41 So. 369, 117 Am. St. Rep. 758, 9 Ann. Cas. 1; Woods v. Campbell, 87 Miss. 782, 40 So. 874; Southern Home Bldg. & Loan Ass'n v. Tony, 78 Miss. 916, 29 So. 825; Purvis v. Woodward, 78 Miss. 922, 29 So. 917; 21 C. J. 178, sec. 157.

In Thompson & Co. v. Lamar County Agricultural High School et al., 117 Miss. 621, 78 So. 547, it was held that persons selling goods on the order of the principal of an agricultural high school must know the law and the extent of the powers of the principal of the school as well as of the school trustees, and must look alone to the individuals with whom they contracted.

⸱ In McKinnon, Supt. of Education, v. Gowan Bros., 127 Miss. 545, 90 So. 243, 244, it was held that where donated land is conveyed to trustees for county high school purposes, it is a conveyance to the county and is public property, and a dormitory thereon is school property. It was further held therein that a materialman's or mechanic's lien for construction or repairs cannot be enforced

against an agricultural high school building belonging to the county, nor can a money judgment be obtained against the trustees in their official capacity, where no funds for the particular purpose have been furnished them. Judge Holden, speaking for the court, there said: "Without giving consideration to whether or not the trustees of such a school may be sued generally, as such, to obtain a money judgment, it is sufficient to say that no fund had been created from which to pay the appellees' demand, and these buildings, being the property of the county, are not subject to sale to satisfy the claim of a mechanic or materialman," citing 18 R. C. L. 881, 882; United States F. & G. Co. v. Marathon Lbr. Co., 119 Miss. 802, 81 So. 492; and Panola County v. Gillen, 59 Miss. 198.

These cases, we think, settle the doctrine that there can be no liability established against a county without compliance with the statutory conditions, and that a person who contracts with a public officer must take notice of the extent of his authority, and if a contract violates the public policy of the state, it cannot be enforced.

In the case at bar, the school district purchased property not from the bank, and we are not called upon in this case to say whether, if the property had been purchased from the bank, the bank could rescind the contract and recover the property. The property was purchased from a person. It is true the bank loaned the trustees the money which they were not authorized to borrow, and this money was used in paying for the teachers' home, and the bank is therefore limited to whatever rights it may have against the trustees as individuals, since it was not the vendor of the property and cannot claim the right of a vendor.

It follows from what we have said that we think the court below erred in dismissing the bill, and the judgment will be reversed and the cause remanded.

Reversed and remanded.